IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 13, 2008

Charles R. Fulbruge III
Clerk

———————

No. 06-11156

———————

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

OSVALDO CISNEROS-GUTIERREZ

Defendant-Appellant

———————

Appeal from the United States District Court
for the Northern District of Texas

———————

Before JOLLY, HIGGINBOTHAM, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A jury found Osvaldo Cisneros-Gutierrez (Defendant) guilty for his participation in a drug dealing conspiracy. The district court sentenced Defendant to 292 months' imprisonment. The central issue in this appeal is whether the district court erred by admitting as substantive evidence under Federal Rule of Evidence 801(d)(1)(A) a redacted version of a witness's factual resume from his plea hearing that directly inculpated Defendant. We affirm.

I

Edgardo Gutierrez (Edgardo), Defendant's brother, lived in DeSoto, Texas. He came to the attention of the Tarrant County Narcotics Task Force and the Drug Enforcement Agency (DEA) for his drug dealing. During a stakeout of

Edgardo's home, the Task Force observed Rondy Booth enter and leave the house. With the help of local law enforcement, the Task Force pulled Booth over shortly thereafter for a traffic violation, and a search of the car uncovered drugs. Booth agreed to cooperate with the Task Force, and he told them that Edgardo was expecting a large methamphetamine shipment from California that night. The Task Force, with the assistance of the DEA, continued to surveil Edgardo's home and obtained a search warrant.

Shortly after midnight, Defendant and his cousin, Rene Cisneros-Gomez, arrived at Edgardo's home. They had driven from California. There was no other foot or vehicle traffic at the house that night. The next morning Defendant, Edgardo, and Cisneros-Gomez left Edgardo's house. They were stopped a short distance away, while the Task Force and DEA executed the search warrant on Edgardo's house. Agents discovered several guns, some $47,000 in cash, and the interior shell of an ice chest containing thirteen pounds of methamphetamine in Edgardo's bedroom closet. A fingerprint from Cisneros-Gomez was found on the ice chest shell; Defendant's fingerprints were not found on the cooler or the drugs, but the cooler and drugs had been washed.

Car rental records showed that, in the weeks before his arrest, Defendant had made at least two other trips from California, renting a car one-way and dropping it off at a Dallas airport. Phone records indicated frequent contact between Defendant and Edgardo during Defendant's drives to Texas.

Defendant was charged in a superseding indictment with one count of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).

During post-arrest interviews with DEA Agent Ric Smith, Edgardo implicated Defendant in the drug conspiracy. In June 2005, Edgardo pled guilty to drug conspiracy and possession of a firearm during, and in connection with, a drug offense. Edgardo signed a factual resume that read in part, "[h]e agrees

that he possessed the methamphetamine found in his master bedroom closet with the intent to distribute, that the Glock pistol belonged to him, and that his brother and co-defendant, Osvaldo Cisneros-Gutierrez delivered the methamphetamine to him from California prior to the execution of the search warrant on April 27, 2005." During his plea hearing, Edgardo admitted that the contents of the factual resume were true. Defendant, who was on pretrial release, absconded; however, he eventually turned himself in.

The week before Defendant's trial, Edgardo told the Government that he did not want to testify and that he was having problems remembering things. The Government advised the district court and Defendant during a pretrial conference that Edgardo might be an adverse witness and that the Government might request leave to examine him by leading questions. Defendant did not have access to Edgardo during the time leading up to trial.

At trial, the Government first called a number of law enforcement officers to testify regarding their investigation, and the surveillance and search of Edgardo's home. The Government then called Edgardo, initially treating him as a non-adverse witness. Edgardo exhibited extensive memory problems from the beginning of his testimony, and the district court allowed the Government to treat him as an adverse witness and to use leading questions.

Edgardo's testimony contradicted statements made during his interviews with Agent Smith. As the Government began to impeach Edgardo, Defendant requested that the court give the jury a limiting instruction on the use of prior statements admitted to impeach the witness. Defendant proposed an instruction that tracked language in the Fifth Circuit Pattern Jury Instruction. The Government had no objection, and the court gave the jury the requested instruction. The Government's questioning turned to Defendant's participation in Edgardo's drug dealing. Edgardo testified that Defendant had not agreed to bring the methamphetamine from California to him. The Government

3

impeached Edgardo's testimony with his prior statements to Agent Smith; Edgardo generally stated that he could not recall making any of the statements to Agent Smith, and specifically said that he could not recall telling Agent Smith that Defendant and his cousin brought the methamphetamine from California. The Government then focused on Edgardo's factual resume, which the court admitted as impeachment evidence. Defendant requested that the court repeat its limiting instruction on impeachment a number of times during the Government's examination of Edgardo, which the court did.

At the end of Edgardo's testimony, the Government moved to admit Edgardo's factual resume as substantive evidence under Rule 801(d)(1)(A). Defendant objected, and the court sustained his objection, but said that it would do some research and might revisit its ruling. The Government called Agent Smith next, and part of his testimony was used to further impeach Edgardo. The court told Defendant that it had found authority supporting the Government's position that the factual resume could be admitted as substantive evidence. Defendant persisted in his objection that the factual resume was not admissible as substantive evidence. However, the court overruled his objection, and allowed a redacted version of the factual resume to be admitted as substantive evidence. Edgardo was recalled as a witness. After Defendant cross-examined Edgardo, the Government questioned him about the factual resume on re-direct. Edgardo specifically denied that Defendant brought the drugs from California, testifying that the drugs were already at his house when Defendant arrived for a visit.

The jury found Defendant guilty. The district court found that the firearms in Edgardo's closet should be "attributed" to Defendant, leading to a two-level sentence enhancement. The court sentenced Defendant to 292 months' imprisonment, a sentence that was ten years longer than Edgardo's.

II

Defendant alleges numerous errors in the district court's evidentiary rulings involving Edgardo. We review these rulings for abuse of discretion, and review any error under harmless error analysis.[1]

A

We begin with Defendant's contention that the district erred by admitting the redacted version of Edgardo's factual resume, which stated that Defendant delivered the methamphetamine , as substantive evidence under Rule 801(d)(1). Neither party cites to any precedent that is on point.

Rule 801(d)(1)(A) provides that "[a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Edgardo testified at Defendant's trial and was subject to cross-examination.[2]

We have previously concluded that a witness's "feigned" memory loss can be considered inconsistent under the Rule, for "'the unwilling witness often takes refuge in a failure to remember.'"[3] The breadth and depth of Edgardo's claimed memory loss is facially suspect to say the least, and "[t]he district court reasonably could have concluded that this selective memory loss was more

---

[1] United States v. Nguyen, 504 F.3d 561, 571 (5th Cir. 2007), petition for cert. filed, No. 07-8807 (Jan. 10, 2008).

[2] The district court first indicated that the factual resume would not be admissible as substantive evidence, and Defendant did not cross-examine Edgardo. Once the court ruled that it was admissible as substantive evidence, Edgardo was recalled and Defendant cross-examined him. After the Government examined Edgardo on re-direct, Defendant examined Edgardo regarding the factual resume on re-cross.

[3] United States v. Bigham, 812 F.2d 943, 947 (5th Cir. 1987) (quoting 3A J. Wigmore, Evidence § 1043, at 1061 (Chadbourn rev. ed. 1970)).

convenient than actual."[4] Moreover, Edgardo denied that Defendant agreed to deliver methamphetamine to him during direct examination. While not a per se repudiation of the factual resume, "we do not read the word 'inconsistent' in Rule 801(d)(1)(A) to include only statements diametrically opposed or logically incompatible."[5] Once the court indicated that the factual resume was substantively admissible, Defendant objected that Edgardo had not made an inconsistent statement; Edgardo was recalled as a witness and testified on re-redirect that the drugs were already at his home. We will not disturb the district court's finding of inconsistency on this record.

We are unaware of any decisions of this court, save one unpublished decision,[6] addressing whether plea hearings fall within Rule 801(d)(1)(A)'s ambit. A number of our sister circuits have determined that plea hearings do.[7] We are persuaded by this authority, and join them in so holding.

The difficulty is whether the factual resume constitutes a statement of Edgardo's given during the hearing under oath. The Government urges that Edgardo "adopted" the statement in the factual resume by testifying to its truth during his plea hearing, and we agree, while mindful that using the term "adoption" in these circumstances creates some awkwardness.

---

[4] Id.

[5] United States v. Williams, 737 F.2d 594, 608 (7th Cir. 1984); see also United States v. Butterworth, __ F.3d __, 2007 WL 4441117, at *3 (1st Cir. 2007) (same); United States v. Dennis, 625 F.2d 782, 795 (8th Cir. 1980) (same).

[6] See United States v. Nelson, 242 Fed. Appx. 164, 169 (5th Cir. 2007) (unpublished) ("Accordingly, Edmond's statement of January 12, 2006 [made during her guilty plea] was rightly admitted as substantive evidence [under 801(d)(1)(A)], and we find no error.").

[7] See United States v. Meza-Urtado, 351 F.3d 301, 303-04 (7th Cir. 2003); United States v. Knox, 124 F.3d 1360, 1363-64 (10th Cir. 1997); United States v. Matlock, 109 F.3d 1313, 1319 (8th Cir. 1997); United States v. Lopez, 944 F.2d 33, 41 (1st Cir. 1991); see also United States v. Ricketts, 317 F.3d 540, 544 (6th Cir. 2003) (indicating that plea hearings qualify).

Although the factual resume was drafted by the Government, Edgardo inculpated Defendant in interviews with the Government, and the relevant wording in the resume indicates that it was based on Edgardo's admissions – the critical paragraph says that Edgardo cooperated with law enforcement and that he "agrees" that Defendant delivered the drugs. Prior to the plea hearing, Edgardo and his lawyer reviewed and signed the resume, and thereby, according to the resume, "agreed" to its content. At the hearing, Edgardo declined the opportunity to change or revise the factual resume, and stated that he understood its contents. Critical for our purposes, Edgardo admitted under oath that the factual resume was "true and correct in every respect." This was a sufficient adoption.[8] Put more directly, Edgardo's testimony at the plea hearing is a sworn statement that the facts in the factual resume are true; thus, he made a sworn statement that it is true that he agrees Defendant delivered the drugs.[9]

This is not, then, a case where the statements to be admitted under Rule 801(d)(1)(A) are only found in the notes, reports, or affidavits prepared by law enforcement officers, a situation, as Defendant notes, that a number of courts have held falls outside the Rule.[10]

While it would have been an easier question if Edgardo had admitted under oath during the plea hearing that he made the inculpatory statement and

---

[8] See Bell v. United States, 790 A.2d 523, 528-29 (D.C. App. 2002) (finding a witness's guilty plea factual statement admissible in similar circumstances and under a hearsay rule that tracks Federal Rule of Evidence 801(d)); cf. United States v. Davis, 487 F.2d 112, 123 (5th Cir.1973) (explaining that "if the witness admits the truth of the prior inconsistent statements then the witness in effect adopts the prior statement as his present testimony"); McIntyre v. Reynolds Metals Co., 468 F.2d 1092, 1094 (5th Cir. 1972) (explaining that a witness who admits he made a statement and that it is true adopts the statement); Slade v. United States, 267 F.2d 834, 838-39 (5th Cir. 1959) (same).

[9] Cf. United States v. Trevino, 131 F.3d 1140 (5th Cir. 1997).

[10] See, e.g., United States v. Lloyd, 10 F.3d 1197, 1217 n.27 (6th Cir. 1993); United States v. Dietrich, 854 F.2d 1056, 1061-62 (7th Cir. 1988); United States v. Livingston, 661 F.2d 239, 242 (D.C. Cir. 1981). We express no opinion on such a situation.

that it was true – or to have otherwise testified that Defendant delivered the drugs – under these circumstances, his failure to do so is not fatal to finding that he adopted the statement. We need not, and do not, address whether facts in the factual resume of which Edgardo had no personal knowledge became part of his testimony at the plea hearing. The district court did not abuse its discretion by admitting the redacted factual resume as substantive evidence.

B

Defendant argues that the Government's "primary purpose" in calling Edgardo was to put otherwise inadmissible evidence before the jury under the guise of impeachment.

The Government argues that Defendant failed to raise this objection below, limiting our review to plain error.[11] We agree. We have previously suggested that a defendant must object in these circumstances,[12] and at least two of our sister circuits have required an objection.[13] Requiring an objection is a sound rule, for it affords the district court the opportunity either to avoid the problem in the first instance by preventing the witness from testifying, or, at the least, to "ameliorate" any error, for example with jury instructions.[14] Defendant never objected despite indications that Edgardo was a problematic witness for the Government. The Government admitted pre-trial that Edgardo might be

---

[11] See United States v. Olano, 507 U.S. 725 (1993).

[12] See United States v. Hogan, 763 F.2d 697, 701 (5th Cir. 1985) ("While the Hogans' objections discussed earlier are not paradigms, they clearly were sufficient to bring the issue to the attention of the trial court and thus preserve this ground for review."), withdrawn in part on other grounds, 771 F.2d 82 (5th Cir. 1985).

[13] See United States v. Gomez-Gallardo, 915 F.2d 553, 555-56 (9th Cir. 1990) (applying plain error review where defendant failed to raise this claim in the district court); United States v. Johnson, 802 F.2d 1459, 1466-67 & n.18 (D.C. Cir. 1986) (explaining that the defendant's "failure to object to introduction of the statement as impermissible bootstrapping constituted a waiver").

[14] See Hogan, 763 F.2d at 702 (explaining that limiting instructions can "ameliorate" a jury's confusion between impeachment evidence that is otherwise impermissible hearsay).

adverse, and Edgardo demonstrated extensive "memory problems" from the beginning of his testimony. Defendant had ample opportunity after the court declared Edgardo an adverse witness to object. Finally, Defendant's motion for judgment of acquittal focused only on the sufficiency of the evidence; it did not alert the district court to the Government's alleged improper conduct.[15] Because there was no objection, we need not address the proper timing of an objection.

Under plain error review, we will grant relief only if (1) there was error, (2) the error was plain or clear, and (3) the error affects the defendant's substantial rights.[16] Even if it does meet these requirements, we will not exercise our discretion to grant relief unless the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"[17]

Federal Rule of Evidence 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." The Government concedes that it "may not call a witness it knows to be hostile for the primary purpose of eliciting otherwise inadmissible impeachment testimony, for such a scheme merely serves as a subterfuge to avoid the hearsay rule."[18] But, the Government continues, that was not its purpose in calling Edgardo.

We note initially that the admission of the redacted factual resume as substantive evidence saps this argument of much of its force, for the critical information that Defendant delivered the drugs was properly before the jury as substantive evidence. In any event, we conclude that there was no error.

---

[15] See United States v. Burton, 126 F.3d 666, 673 (5th Cir. 1997) ("[T]he touchstone is whether the objection was specific enough to allow the trial court to take testimony, receive argument, or otherwise explore the issue raised.").

[16] Olano, 507 U.S. at 732-34.

[17] Id. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

[18] Hogan, 763 F.2d at 702.

Edgardo inculpated Defendant during interviews with law enforcement, and then under oath in admitting the truth of his factual resume during his plea hearing. The Government, therefore, initially had a legitimate, well-grounded expectation that Edgardo would provide important substantive testimony regarding Defendant's participation in the conspiracy. Prior to trial, Edgardo did tell the Government that he did not want to testify and that he was having trouble remembering things, but there is no indication that he recanted his earlier statements inculpating Defendant or suggested that he would change his story if called to testify. While Defendant contends that the Government had such knowledge, he points to nothing in the record that confirms the accusation. Defendant offers, in other words, unsubstantiated speculation regarding the Government's "primary purpose," which distinguishes this case from the cases on which he relies.[19]

For example, in United States v. Hogan, the witness made statements to law enforcement implicating the defendants in a drug conspiracy.[20] The witness changed his story before trial, saying the defendants were not involved, and again recanted at trial during a voir dire examination outside the jury's

---

[19] See, e.g., United States v. Ince, 21 F.3d 576, 581 (4th Cir. 1994) ("Unlike the classic 'turncoat' witness, Neumann certainly had not shocked the Government with her 'loss of memory' at the second trial, as she had made it plain during the first trial that she would not readily testify to the alleged confession of her friend, Nigel Ince." (emphasis added)); United States v. Zackson, 12 F.3d 1178, 1184 (2d Cir. 1993) ("The voir dire of Zackson demonstrated conclusively that Zackson would offer no testimony probative of the conspiracy."); Johnson, 802 F.2d at 1467 ("[I]t was entirely inappropriate for the prosecution to call Halmon to the stand when it well knew that his live testimony, unlike his prior statement, would be favorable to the defendant." (emphasis added)); United States v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984) ("But it would be an abuse of the rule, in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence–or, if it didn't miss it, would ignore it." (emphasis added)); Whitehurst v. Wright, 592 F.2d 834, 839 (5th Cir. 1979) ("Humphrey denied that he had fired the gun, and Mrs. Whitehurst was aware that he would so testify." (emphasis added)).

[20] Hogan, 763 F.2d at 699.

presence. In its opening statement, the Government told the jury "I anticipate in fact that [the witness] may testify that he was in Mexico on legitimate business; that in fact the [defendants] are not guilty . . . . If [the witness] testifies as I anticipate, we will show his testimony is untruthful."[21] The witness testified, as expected, that the defendants were not involved, and the Government introduced the prior inconsistent statements for impeachment. The defendants were convicted, but we reversed. We explained that "[t]he rule in this Circuit . . . is that 'the prosecutor may not use such a statement under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which is not otherwise admissible.'"[22] However, we concluded that

> [t]his is not a case where the government needed to determine whether a witness would adhere to his story under oath and subject to perjury. . . . [The witness] had already testified twice under oath, and both times he adhered to his account of fabrication. . . . The government was not entitled to another test of [the witness's] sworn testimony. [The government] well knew what [the witness] would say under oath.[23]

The circumstances here differ from those in Hogan. It is too slim a reed to support a finding of an improper purpose on the Government's part when the witness has only indicated he does not want to testify and has forgotten things. These are not uncommon complaints. A witness should be expected to fulfill his oath and testify truthfully even if it is unpleasant or painful for him. Exclusion of a witness because of memory problems is generally an inappropriate remedy; the Rules of Evidence, for example, provide avenues for handling a witness with

---

[21] Id. at 700.

[22] Id. at 702 (quoting United States v. Miller, 664 F.2d 94, 97 (5th Cir. 1981)).

[23] Id. at 703.

foggy recollections[24] and skilled questioning by counsel may, despite what is forgotten, still lead to probative testimony. In the absence of something in the record to ground a finding that the Government's "primary purpose" in calling Edgardo was to elicit otherwise impermissible evidence through impeachment, we cannot find plain error.[25]

C

Defendant contends that, even if the district court properly allowed the Government to call Edgardo, it erred "by permitting the prosecutor, in the presence of the jury, to recite to a recalcitrant Government witness a litany of leading questions which incorporated the entire substance of unsworn, oral statements inculpating [Defendant]."[26]

Rule 611(c) allows the use of leading questions on direct examination "as may be necessary to develop the witness' testimony." The rule further provides that "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading question." We note that given the extent of Edgardo's memory problems, which reasonably appears to have been feigned, and Edgardo's hostility, the district court did not abuse its discretion in designating Edgardo as an adverse witness and allowing the Government to examine him by leading questions.[27]

---

[24] See, e.g., Fed. R. Evid. 612 (allowing the use of "a writing to refresh memory for the purposes of testifying").

[25] See United States v. Lopez, 271 F.3d 472, 484 n.11 (3d Cir. 2001); Miller, 664 F.2d at 97.

[26] Defendant-Appellant's Brief at 26 (quoting United States v. Shoupe, 548 F.2d 636 (6th Cir. 1977)).

[27] See United States v. Tunnell, 667 F.2d 1182, 1188 (5th Cir. 1982); see also Fed. R. Evid. 611(c) advisory committee's note ("The matter clearly falls within the area of control by the judge over the mode and order of interrogation and presentation and accordingly is phrased in words of suggestion rather than command.").

Turning to the substance of the Government's questions, Defendant points to the Sixth Circuit's decision in United States v. Shoupe, where the court "h[e]ld that the recitation by the prosecutor of the entire substance of a witness's disavowed, unsworn prior statements, which, if credited by the jury, would be sufficient to sustain a conviction, abridged defendants' right to a fair trial in violation of the Due Process Clause of the 5th Amendment."[28] As we understand his argument, Shoupe is relevant because of the Government's impeachment of Edgardo with his prior inconsistent statements inculpating Defendant. The concern, then, is that "[t]he jury will hear the impeachment evidence, which is not otherwise admissible and is not substantive proof of guilt, but is likely to be received as such proof. The defendant thus risks being convicted on the basis of hearsay evidence that should bear only on a witness's credibility."[29] Two reasons counsel against finding error.

First, and significantly, the district court admitted Edgardo's redacted factual resume as substantive evidence under Rule 801(d)(1)(A),[30] a decision we find no reversible error in as we have explained. Although the Government questioned Edgardo about details of his statements to Agent Smith that do not appear in the factual resume, the factual resume included the critical admission that Defendant delivered the methamphetamine. The details that do not appear in the factual resume are collateral to that key fact, and in some instances were properly before the jury based on other evidence and testimony – any lingering error in the admission of those details is harmless.

---

[28] 548 F.2d at 643.

[29] Hogan, 763 F.2d at 702.

[30] Cf. United States v. O'Malley, 796 F.2d 891, 899 (7th Cir. 1986) ("[T]he trial court admitted Elder's testimony regarding Fishman's identification of Salerno not as impeachment evidence under Rule 607 but as independently admissible substantive evidence under Rule 801(d)(1)(C).").

Second, the district court repeatedly instructed the jury on prior inconsistent statement impeachment evidence. We have explained that jury instructions "can ameliorate a jury's confusion" in this situation,[31] and we are mindful of "[t]he rule that juries are presumed to follow their instructions."[32] Defendant contends that the limiting instructions were flawed, and thus do not cure any harm. We disagree.

When the Government began impeaching Edgardo, Defendant's counsel specifically requested a cautionary instruction, calling it a "limiting instruction" in the presence of the jury. The court gave the instruction suggested by Defendant, which tracked part of the Fifth Circuit Pattern Jury Instruction on impeachment by prior inconsistent statements. The instruction stated:

> The government is offering at this time what it contends are earlier statements that the witness made to Agent Smith. Earlier statements of a witness are not being admitted in evidence to prove the content of those statements are true. You may consider the earlier statements only to determine whether you think they are consistent or inconsistent with the trial testimony of this witness and whether they affect the credibility of this witness.

Defendant's counsel repeatedly requested that the court reiterate or reinforce the "limiting instruction," which the court did. Although the court did not repeat the substance of the instruction each time, instead only stating "you are so instructed" or that its "limiting instruction" applied, the only instruction the court can plausibly be understood to be referring to was the limiting instruction. Moreover, Defendant did not object to the shorthand references to the instruction that the court used, which necessarily limits our review.

---

[31] Hogan, 763 F.2d at 702; see also United States v. West, 22 F.3d 586, 593 (5th Cir. 1994) (including jury instructions as one factor counseling against finding error in similar circumstances).

[32] Richardson v. Marsh, 481 U.S. 200, 211 (1987).

In one instance during the Government's examination of Agent Smith, the court did instruct the jury that the prior inconsistent statements were being admitted for "purposes of impeachment." Defendant's counsel immediately, and properly, asked the court to clarify that the statement was "[f]or determining the credibility of the witness," which the court did. The jury also received the limiting instruction in the court's charge.

Although we "acknowledge[], as have many others, that the legal distinction between using a statement to destroy credibility and to establish the stated fact 'is a fine one for the lay mind to draw,'"[33] the combination of the substantive admission of Edgardo's factual resume and the court's limiting instructions convince us there was no reversible error.

D

Defendant finally argues that the district court abused its discretion by allowing the Government to impeach Edgardo's inconsistent statements through Agent Smith's testimony. We disagree. Federal Rule of Evidence 613(b) allows extrinsic evidence of prior inconsistent statements under certain conditions.[34] Defendant argues that Agent Smith's testimony was improper impeachment because the Government had an improper purpose in calling Edgardo as a witness. This argument falters, however, at the first step because we reject Defendant's contention that the Government had an improper purpose. We also note that the court repeated its limiting instruction, discussed supra, in full during Smith's testimony, and the redacted factual resume was admitted as

---

[33] Slade, 267 F.2d at 839 (quoting Dowell, Inc. v. Jowers, 166 F.2d 214, 219 (5th Cir. 1948)).

[34] See Fed. R. Evid. 613(b) ("Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.").

substantive evidence.  Defendant raises no other argument regarding Smith's testimony.

### III

Defendant raises three sentencing arguments.  First, he argues that the district court erred in applying a weapons enhancement.  Second, Defendant contends that the district court improperly treated the Guidelines range as presumptively reasonable.  Finally, Defendant challenges the reasonableness of his sentence, including the presumption of reasonableness this court affords Guidelines sentences.  We find no error.

We review a sentencing decision for "reasonableness," and as the Supreme Court has clarified, "[the] explanation of 'reasonableness' review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions."[35]  This standard applies "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range."[36]  Gall v. United States bifurcates the process for reviewing a sentence.  Appellate courts

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range.[37]

Provided that the sentence is procedurally sound, the appellate court then considers the "substantive reasonableness of the sentence imposed under an

---

[35] Gall v. United States, 128 S. Ct. 586, 594 (2007).

[36] Id. at 597.

[37] Id.

abuse-of-discretion standard."[38]   Neither Gall, Rita v. United States,[39] nor Kimbrough v. United States[40] purport to alter our review of the district court's construction of the Guidelines or findings of fact.  Thus, "[a] district court's interpretation or application of the Sentencing Guidelines is reviewed de novo, and its factual findings . . . are reviewed for clear error.  There is no clear error if the district court's finding is plausible in light of the record as a whole."[41]

A

Section 2d1.1(b)(1) of the Guidelines allows for a two-level sentence enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during certain drug offenses.

The Government must prove, by a preponderance of the evidence, that the defendant possessed the weapon, and it can do so in two ways:

> First, the Government can prove that the defendant personally possessed the weapon by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. . . .  Alternatively, when another individual involved in the commission of an offense possessed the weapon, the Government must show that the defendant could have reasonably foreseen that possession.[42]

Defendant contends that the district court applied the wrong standard of proof, and that the district court failed to make the required finding that he possessed the firearm.

---

[38] Id.

[39] 127 S. Ct. 2456 (2007).

[40] 128 S. Ct. 558 (2007).

[41] United States v. Juarez Duarte, __ F.3d __, 2008 WL 54791, at *3 (5th Cir. Jan. 4, 2008) (per curiam) (post-Gall and Kimbrough).

[42] United States v. Hooten, 942 F.2d 878, 882 (5th Cir. 1991).

The district court did not apply the wrong standard of proof. The court specifically stated that its "factual findings are based upon a preponderance of the evidence." The court did reference the Guideline's commentary, noting that "unless it's clearly improbable that the weapon was connected to the offense that this adjustment applies," and that "[t]he evidence, in the Court's view, actually shows that it is clearly probable that the weapons were connected . . . with the offense." This discussion, however, was not in reference to Defendant's possession of the firearm, but rather addressed the separate question of whether the firearm was connected to the drug offense.

Nor did the district court fail to make the required finding of possession. During the sentencing hearing, the court twice stated that for the "reasons stated in the presentence report and the addendum," the firearms in Edgardo's bedroom closet were "attributable" to Defendant. The presentence report stated that Edgardo's possession of the firearms was "reasonably foreseeable" to Defendant, and that conclusion was not based on the weapon enhancement commentary, but rather on § 1B1.3(a)(1) of the Guidelines. That is, the presentence report did not conflate the possession and connection with the offense issues. In her addendum, the probation officer reiterated that the weapons were connected to the offense and that Edgardo's possession of the weapons was "reasonably foreseeable" to Defendant. The court's express reliance on the presentence report and addendum constitute a finding that Edgardo's possession of the firearms was "reasonably foreseeable" to Defendant.[43] This case differs from those relied on by Defendant where there was no indication that the sentencing court had found that the defendant

---

[43] See, e.g., United States v. Carreon, 11 F.3d 1225, 1231 (5th Cir. 1994) (explaining that "we have allowed the district court to make implicit findings by adopting the PSR" so long as "the findings in the PSR are so clear that the reviewing court is not left to 'second-guess' the basis for the sentencing decision").

"possessed" the weapons.[44] The court might have addressed more specifically the possession issue, but we are not presented with a record that leaves this court "second-guessing" the basis of the sentencing court's decision.

Nor can we say that this finding is clearly erroneous. The Government proved that Edgardo, Defendant's co-conspirator, knowingly possessed the firearms, and other facts supporting a "reasonably foreseeable" finding include Defendant's relationship with his brother; his extensive participation in the conspiracy, that is the numerous trips running drugs; his presence during at least one of Edgardo's drug deals; and his staying at Edgardo's home overnight as well as the time he lived with Edgardo in Dallas.[45] The amount of drugs Defendant delivered and their street value increase the likelihood – and thus foreseeability – that those involved in the conspiracy will have dangerous weapons. "It was readily foreseeable that firearms would be employed as tools of the drug-trafficking trade."[46] The record as a whole adequately supports the district court's finding.

B

The Supreme Court has explained that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should

---

[44] See Hooten, 942 F.2d at 882 ("The district court never addressed the question of who owned the pistol. Instead of making such a finding, the court only listened to the government's response to Hooten's objection and overruled the objection without explanation."); United States v. Aguilera-Zapata, 901 F.2d 1209, 1216 (5th Cir. 1990) ("The district court did not, expressly or impliedly, find whether or not Aguilera should have reasonably foreseen Martinez' possession of the revolver.").

[45] See United States v. Thomas, 120 F.3d 564, 574 (5th Cir. 1997).

[46] United States v. Garza, 118 F.3d 278, 286 (5th Cir. 1997); see also Aguilar-Zapata, 901 F.2d at 1215 (same).

apply."[47] Rather, the court "must make an individualized assessment based on the facts presented."[48]

The district court complied with the commands of Booker and Rita. Defendant provided the court with written arguments addressing the sentence, as well as oral arguments and the testimony of Defendant's wife and sister. The court addressed Defendant's objections to the presentence report, noted that it had considered the 18 U.S.C. § 3553(a) factors, and briefly explained why it was unpersuaded by Defendant's pleas for leniency. The court concluded that "although I do believe that a sentence at the bottom of the range is appropriate, this is a case that I believe should be sentenced within the advisory guidelines."

There is no indication in the district court's comments that it believed the Guidelines range presumptively should apply. The court understood that the Guidelines were advisory, but concluded that the Guidelines provided an appropriate sentencing range. In short, the district court disagreed with Defendant over whether the Guidelines sentence was appropriate; that, however, is a substantive, not procedural, conclusion to which we now turn.

C

We have held that "[w]hen, in its discretion, a court imposes a sentence falling within a properly calculated guideline range, such a sentence is presumptively reasonable."[49] Anticipating the Supreme Court's decision in Rita, Defendant argued that this presumption violates Booker. The Court, however, disagreed, and held that the Courts of Appeals can apply such a presumption.[50] Defendant's challenge to the presumption therefore fails.

---

[47] Rita, 127 S. Ct. at 2465; see also Gall, 128 S. Ct. at 596-97 ("[The sentencing court] may not presume that the Guidelines range is reasonable.").

[48] Gall, 128 S. Ct. at 597.

[49] United States v. Medina-Argueta, 454 F.3d 479, 481 (5th Cir. 2006).

[50] Rita, 127 S. Ct. at 2462-65.

Defendant fails to marshal arguments sufficient to overcome the presumption of reasonableness, let alone arguments strong enough for us to hold that the district court abused its discretion. The district court explained that Defendant was more than a bit player in the illegal activity, he "was involved in transporting a significant amount of methamphetamine . . . [and] was integrally involved in this transaction." The court also noted that Defendant had fled, though he did eventually turn himself in.

Defendant's principal contention is that his sentence is unreasonable because his brother, who was more deeply involved in the conspiracy, received a sentence ten years less than his. Defendant and Edgardo are not, however, similarly situated; in particular, Edgardo pled guilty, provided information to law enforcement authorities, and did not flee before trial. Defendant also fails to consider that his microcosmic approach to sentencing disparities, while relevant,[51] would create its own set of disparities with other similarly situated defendants. We are not unmindful of the Supreme Court's admonition that "[s]ince the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."[52]

In essence, Defendant asks us to engage in the substantive second-guessing of the sentencing court that the Supreme Court just told us we are not to do. Although we might have imposed a different sentence, "tak[ing] into account the totality of the circumstances,"[53] we cannot say the district court abused its discretion.

---

[51] See Gall, 128 S. Ct. at 600 ("From these facts, it is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated." (emphasis added)).

[52] Id. at 599.

[53] Id. at 597.

For the foregoing reasons, we AFFIRM.