# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 24, 2012

Lyle W. Cayce
Clerk

No. 11-50366
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAVIER GARCIA-ROMAN,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. 2:09-CR-777-3

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

A jury convicted Javier Garcia-Roman of conspiracy to possess with intent to distribute 100 grams or more of heroin and less than 500 grams of cocaine in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

violation of 21 U.S.C. §§ 846 and 841(a)(1) and conspiracy to import 100 grams or more of heroin and less than 500 grams of cocaine in violation of 21 U.S.C. §§ 963, 952(a), and 960(a)(1). The district court sentenced him to 168 months of imprisonment on each count, to run concurrently.

Garcia-Roman contends that the evidence was insufficient to support the verdict. Because he moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, we review his claim *de novo*, "applying the same standards as the district court in reviewing the sufficiency of the evidence." *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999). We consider "whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Greer*, 137 F.3d 247, 249 (5th Cir. 1998).

"To establish a conspiracy under either 21 U.S.C. § 846 or § 963, the Government must prove beyond a reasonable doubt (1) that an agreement existed between two or more persons to violate the applicable narcotics law (i.e., a conspiracy existed), (2) that each alleged conspirator knew of the conspiracy and intended to join it and (3) that each alleged conspirator participated (i.e., joined) voluntarily in the conspiracy." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). Because knowledge of drug type and quantity is not an element of an offense under § 841(a)(1), *United States v. Gamez-Gonzalez*, 319 F.3d 695, 699-700 (5th Cir. 2003), or of an offense under § 952(a) and § 960(a), *United States v. Restrepo-Granda*, 575 F.2d 524, 527-28 (5th Cir. 1978); *see United States v. Valencia-Gonzales*, 172 F.3d 344, 345-46 (5th Cir. 1999), the government was not required to prove that Garcia-Roman *knew* the type or quantity of drugs that his conspiracies involved, *see United States v. Patino-Prado*, 533 F.3d 304, 309-10 (5th Cir. 2008).

The trial evidence showed that Garcia-Roman enlisted his brother, Faver, to help him find someone to bring narcotics into the United States. Faver recruited Britny, with whom Faver made a trip to Piedras Negras, Mexico, in

May 2009 as Garcia-Roman directed their movements over the phone. They met a woman who gave Britny white flip-flops that contained drugs, and Faver and Britny returned to the United States and delivered the flip-flops as instructed by Garcia-Roman. Garcia-Roman paid Britny $500 and subsequently offered Britny $1,000 to make another trip with her friend Lauren.

Britny and Lauren traveled to Piedras Negras in June 2009 as Garcia-Roman directed their movements over the phone. Britny received another pair of white flip-flops from the same woman in Piedras Negras, but they were arrested at the border as they tried to return to the United States. Garcia-Roman gave Faver $200 in cash for expenses for the May trip and initially gave Britny the same amount for expenses for the trip in June. The flip-flops Britny was wearing when she was arrested contained heroin and cocaine.

Thus, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Garcia-Roman conspired to import and to possess with intent to distribute controlled substances. In addition, the jury's findings that the conspiracies involved at least 100 grams of heroin and an unspecified amount of cocaine were supported by a chemist's testimony that the flip-flops Britny attempted to smuggle in June contained 953.4 grams of heroin and 65.1 grams of cocaine.

Garcia-Roman also avers that the district court erred in doubling the amount of drugs seized in June in order to calculate the total amount of drugs that his crimes involved. The district court's determination of the quantity of drugs attributable to a defendant for purposes of U.S.S.G. § 2D1.1 is a factual finding made under the preponderance-of-the-evidence standard. *United States v. Betancourt*, 422 F.3d 240, 247 (5th Cir. 2005). We give "considerable deference" to such factual findings, reversing them "only if they are clearly erroneous." *Id.* at 246 (internal quotation marks and citations omitted). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)

(internal quotation marks and citation omitted).

A court may consider estimates in determining drug quantity for sentencing purposes, provided that the estimates are reasonable and based on reliable evidence. *See, e.g.*, *Betancourt*, 422 F.3d at 246; *see also* § 2D1.1, comment. (n.12). When approximating the amount of controlled substances, a court may consider "similar transactions in controlled substances by the defendant," as well as other factors. § 2D1.1, comment. (n.12). In *Betancourt*, the district court multiplied the amount of cocaine the defendant distributed to one individual by twelve, which was the number of the individuals to whom the defendant had sold cocaine, and we affirmed. *Betancourt*, 422 F.3d at 246-48; *see also United States v. Cabrera*, 288 F.3d 163, 166-73 (5th Cir. 2002) (affirming a similar calculation involving the number of aliens trafficked by the defendant).

Garcia-Roman's conspiracies involved two drug-smuggling trips during which he provided the smugglers $200 in cash for expenses and directed their movements over the phone and in which the smugglers met the same woman in Piedras Negras who gave the same smuggler (Britny) white flip-flops to wear across the border. In addition, the presentence report ("PSR") stated that Garcia paid Faver and Britny the same amount for the first trip that he initially offered to pay Britny for the second trip with Lauren. The PSR explained that the smugglers used the Eagle Pass border crossing during both trips. In light of these similarities, the finding that the conspiracies involved twice the amount of drugs seized during the second trip is plausible in light of the record as a whole. *See Cisneros-Gutierrez*, 517 F.3d at 764; *Betancourt*, 422 F.3d at 246-48.

AFFIRMED.