# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 15, 2022

Lyle W. Cayce
Clerk

No. 21-11143

United States of America,

*Plaintiff—Appellee*,

*versus*

Candido Gomez-Santacruz,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CR-522

Before King, Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:[*]

Candido Gomez-Santacruz appeals the ten-year sentence he received for his illegal reentry into the country. We affirm.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-11143

## I.

On September 20, 2020, Candido Gomez-Santacruz ("Gomez") was arrested by the Dallas Police Department for aggravated assault. That same day, while he was in custody, Immigration and Customs Enforcement discovered that Gomez, a Mexican citizen, was in the United States illegally. Gomez was subsequently charged with illegal reentry after removal from the United States under 8 U.S.C. sections 1326(a) and (b)(2). Gomez previously was removed in 2014 following his release from state prison in Georgia, where he had pleaded guilty to sexual battery, burglary, and false imprisonment in 2012 (the "2012 Convictions"). On March 30, 2021, Gomez pleaded guilty to the illegal reentry offense.

On November 12, 2021, Gomez appeared before the district court for sentencing (the "Sentencing Hearing"). Prior to the Sentencing Hearing, the district court had notified the parties that it was considering imposing a sentence greater than the range recommended under the sentencing guidelines issued by the United States Sentencing Commission (the "Guidelines"). Under the illegal reentry statute, Gomez could receive a maximum sentence of twenty years of imprisonment, 8 U.S.C. § 1326(b)(2); however, the Guidelines recommended a shorter term of imprisonment of fifteen to twenty-one months. In his sentencing memorandum, Gomez argued that he should receive a prison term within the range recommended by the Guidelines. The Government agreed, but contended that the court should impose the maximum term within that range, i.e., twenty-one months.

At the conclusion of the Sentencing Hearing, Gomez was sentenced to 120 months of imprisonment, ninety-nine months higher than the Guidelines' recommendation (the "Variance"); three years of supervised release; and a $100 mandatory special assessment. As explained during the Sentencing Hearing, the district court's chief concern was the "horrifying"

facts surrounding Gomez's 2012 Convictions. According to the arrest report that Gomez provided to the district court, the victim was asleep in her bedroom on October 29, 2011, but awoke to find Gomez in bed with her. (The victim suspected that Gomez had entered through a patio door that she had mistakenly left unlocked.) Gomez had pulled the victim's underwear down to her knees and was rubbing the outside of her vagina with his hands while kissing her neck. Startled, the victim repeatedly asked Gomez to stop, but he refused and grabbed her to prevent her from leaving the bed. The victim was eventually able to free herself from Gomez's grasp, but Gomez blocked the apartment's exit and refused to let her leave. Gomez only left the victim's apartment once she convinced him to go home and get her a cigarette, promising to let Gomez back into the apartment upon his return. Instead, once Gomez had left, the victim locked him out and called the police.

After the court announced its sentence, Gomez lodged multiple objections. First, he argued that the sentence was "unreasonable" and "greater than necessary." Second, Gomez objected to the court's characterizations of his past offense. When providing its justification for its variance from the Guidelines, the court twice incorrectly referred to Gomez's sexual battery offense as rape and once as a sexual assault. Third, Gomez asserted that the court might have considered facts that were unreliable. Specifically, before handing down its sentence, the court stated that it was "disturbing to have an allegation that [Gomez] pulled a gun on somebody" and Gomez "got arrested for that, so [the police] believe there was probable cause." These statements referred to the unrelated, pending aggravated assault arrest. At the same time, however, the court did acknowledge that Gomez had not been convicted for that crime and that it did not need to consider the facts behind the arrest to arrive at its sentence.

The court responded to Gomez's latter two objections. To Gomez's second objection, the court expressed that "[w]hether it was rape or sexual

No. 21-11143

battery does not change my assessment of it, when looking at the facts." And in response to the third objection, the court clarified that the aggravated assault arrest did not influence its sentence because the case had not been "filed"[1] and Gomez had not been convicted.

The court provided other reasons for the Variance as well. Earlier during the Sentencing Hearing, Gomez had apologized for reentering the country, explaining that he had only done so for his four children. The court expressed concern that, because his wife and children were located in the United States, Gomez was likely to "come right back," noting that he previously had done so within a year of being removed. According to the court, Gomez's behavior—particularly the illegal reentry and sexual battery offenses—demonstrated "a lack of respect for the American legal system and its justice," which made Gomez a "threat to all American citizens, and those who are not citizens, in this country." Therefore, the court determined that, in addition to serving as a just punishment, this sentence would effectively deter Gomez from making future attempts to illegally reenter the United States.

At the conclusion of the Sentencing Hearing, the court summarized its reasoning for applying the Variance to Gomez's sentence, albeit using a regrettable choice of words:

> And so I understand that the Sentencing Guidelines are at 15 to
> 21 months, but I don't think that's sufficient time to protect
> the community or to reflect the seriousness of this crime. This
> is not a man who's running back over the border to roof our

---

[1] At the time of Gomez's illegal reentry sentencing, the aggravated assault charge remained pending, but the prosecution had not obtained or filed an indictment regarding the matter.

house. This is not a man who is running back over the border to do lawn work. This is somebody who's a bad guy, who's been convicted of sexual battery. And I understand he argues all the reasons . . . why he pled guilty. But in my eyes, he's a sexual batterer. He keeps coming. Four years didn't stop him. Maybe ten will.

On appeal, Gomez challenges the Variance imposed by the district court as substantively unreasonable. According to Gomez, the Variance is a product of clear error that infected the district court's balancing of the factors it is required to consider during sentencing.

## II.

We review a sentence's substantive reasonableness for an abuse of discretion. *United States v. Khan*, 997 F.3d 242, 247 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1153 (2022). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Teuschler*, 689 F.3d 397, 399 (5th Cir. 2012) (internal quotations omitted). While a court's interpretation of the law, including the Guidelines, is an issue that we review *de novo*, *id.*, its findings of fact are reviewed only for clear error, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Accordingly, factual findings must merely be "plausible." *Id.* at 764. Under the plausibility standard, a court's factual findings are clearly erroneous, if, when viewing the record as a whole, "this court is left with the definite and firm conviction that a mistake has been committed." *Khan*, 997 F.3d at 247 (internal quotations omitted).

A court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. section 3553(a)(2). 18 U.S.C. § 3553(a). For a sentence to be substantively reasonable, a court must consider all of the seven sentencing factors listed in

18 U.S.C. section 3553(a). *Khan*, 997 F.3d at 247. In doing so, a court "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). A court is afforded considerable latitude in deciding that the Guidelines do not appropriately weigh the sentencing factors in its particular assessment and may deviate from the Guidelines' recommendation accordingly. *United States v. Williams*, 517 F.3d 801, 809 (5th Cir. 2008). Thus, a court that chooses to eschew a Guidelines recommendation need not justify its decision based on "'extraordinary' circumstances." *Gall*, 552 U.S. at 47. Instead, the court must "more thoroughly articulate its reasons" than it otherwise would; those reasons should be "fact-specific and consistent with the sentencing factors enumerated in" section 3553(a). *United States v. Hebert*, 813 F.3d 551, 562 (5th Cir. 2015) (internal quotations omitted). "The farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be." *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006) (internal quotations omitted). A court imposing a sentence outside of the Guidelines has failed to adequately account for section 3553(a)'s sentencing factors if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Nguyen*, 854 F.3d 276, 283 (5th Cir. 2017) (internal quotations omitted).

It is not enough for this court to decide that it "might reasonably have concluded that a different sentence was appropriate." *Gall*, 552 U.S. at 51. Rather, we "must give due deference to the district court's decision that the [section] 3553(a) factors, on a whole, justify the extent of the variance." *Id.* Therefore, "[e]ven a significant variance from the Guidelines does not constitute an abuse of discretion if it is commensurate with the individualized, case-specific reasons provided by the district court." *United*

*States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015) (internal quotations omitted).

Gomez raises two issues on appeal, both of which challenge how the district court balanced section 3553(a)'s sentencing factors. First, Gomez asserts that the court unduly weighed the factual findings it made relating to the 2012 Convictions. Second, Gomez contends that the court placed too much emphasis on the sentencing factors involving deterrence and incapacitation.

**A.**

The purposes enumerated in section 3553(a)(2) that a court must consider during its sentencing determination include "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). "A district court's determination of the seriousness of the offense . . . must be rationally related to the nature of the offense." *United States v. Roush*, 466 F.3d 380, 390 (5th Cir. 2006). An individual convicted of illegal reentry may be (1) imprisoned for up to ten years "subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony," or (2) imprisoned for up to twenty years "subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. §§ 1326(b)(1)–(2).

Gomez concedes that his 2012 burglary conviction qualifies as an aggravated felony for the purpose of section 1326(b)(2), making him eligible for a sentence of up to twenty years imprisonment. *Compare* 8 U.S.C. § 1101(a)(43)(G) (defining "aggravated felony," in part, as a "burglary offense" with a "term of imprisonment at least one year"), *with* GA. CODE ANN. § 16-7-1(a) (West 2011) (requiring minimum one-year sentence for

burglary).[2] Nevertheless, Gomez contends that the district court "irrationally and repeatedly inflated the severity" of his illegal reentry by "misinterpreting the nature of his prior sexual-battery conviction."

Gomez argues that the district court's repeated mischaracterization of his prior conviction for sexual battery caused it to improperly exaggerate the significance of that offense while making its sentencing determination. Specifically, Gomez points to multiple occasions during the Sentencing Hearing when the court either misidentified his prior offense as a rape or sexual assault. Gomez contends that in the State of Georgia, where he was convicted, rape is "qualitatively different" than sexual battery, which is reflected in the differences between (1) the elements of both offenses,[3] and (2) the sentencing regime for each offense[4]. Gomez also asserts that the district court incorrectly referred to his sexual battery conviction as a

---

[2] All references and citations to the Georgia Code reflect the statutes as they were written at the time that Gomez committed the offenses leading to the 2012 Convictions.

[3] In Georgia, "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." GA. CODE ANN. § 16-6-22.1(b) (West 2011). "Intimate parts" are defined as "the primary genital area, anus, groin, inner thighs, or buttocks of a male or female and the breasts of a female." *Id.* § 16-6-22.1(a). "A person commits the offense of rape," however, "when there is any penetration of [a female's] sex organ by the male sex organ" "forcibly and against her will." *Id.* § 16-6-1(a). "[T]he term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation." *Haynes v. State*, 756 S.E.2d 599, 602 (Ga. Ct. App. 2014) (quoting *State v. Collins*, 508 S.E.2d 390, 391 (Ga. 1998)).

[4] Sexual battery is a "misdemeanor of a high and aggravated nature," GA. CODE ANN. § 16-6-22.1(c) (West 2011), which is punishable for a term of confinement not to exceed twelve months, *id.* § 17-10-4(a). Rape is punishable "by imprisonment for life without parole, by imprisonment for life, or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life." *Id.* § 16-6-1(b).

"violent felony," arguing that this offense is neither considered a felony nor violent under either Georgia or federal law.[5]

The record indicates that the court was driven to its decision based on the facts (set forth in the arrest report provided by Gomez) underlying Gomez's 2012 Convictions. Although the court may have imprecisely stated the name for one of the crimes for which Gomez was ultimately convicted, it accurately recited the facts supporting that conviction. And after being corrected by Gomez's counsel, the court acknowledged its mistake and confirmed that its decision to impose the Variance was based on its "looking at the facts," and "[w]hether it was rape or sexual battery d[id] not change [its] assessment."

The court's use of the phrase "violent felony" should be similarly discounted. Whether Gomez had previously been convicted of a felony did not influence the court's decision to impose the Variance—the underlying facts did. Additionally, in light of its reliance on the facts surrounding the 2012 Convictions rather than the legal classification of those convictions themselves, it is apparent that the court used the word "violent" in a general sense rather than in the technical, narrower sense sometimes required by law. Notwithstanding Gomez's argument that his prior convictions may not have been technically "violent" as defined by law, violence is frequently associated with sexual offenses in extrajudicial contexts that do not otherwise adhere to his rigid standards.[6]

---

[5] Alternatively, Gomez argues that the district court may have instead been referring to his contemporaneous burglary conviction, but asserts that context supports his initial contention that it was citing his conviction for sexual battery. While we agree that context supports Gomez's first inclination, our analysis and decision remain unaltered even under his alternative theory.

[6] *See, e.g.*, *What is Sexual Violence*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/violenceprevention/sexualviolence/fastfact.html

No. 21-11143

Gomez also contends that vacatur is warranted based on our decision in *United States v. Hoffman*, 901 F.3d 523 (5th Cir. 2018). In *Hoffman*, we vacated the sentence of a defendant, Peter Hoffman, who had been convicted of nineteen counts of wire fraud, one count of mail fraud, and one count of conspiracy to commit mail and wire fraud, all in connection with a large, fraudulent, tax-credit scheme. During sentencing, the district court applied a significant downward variance, sentencing Hoffman to five years probation, even though the Guidelines had recommended fourteen to seventeen years of imprisonment. *Id.* at 536. Calling this disparity "colossal," neither we, nor Hoffman's counsel, could recall a previous challenge to such a substantial downward variance. *Id.* at 555. In vacating the district court's sentence, we reasoned that probation served as an ineffective deterrent for such a large-scale fraud and did not "reflect the serious nature of either this offense or economic crimes more generally," especially considering that Hoffman had been sentenced to probation once before. *Id.* at 557. We also noted the likely "significant and unwarranted" disparities between Hoffman's sentence and the sentences of others who "engaged in frauds of similar magnitude who receive sentences at least in the ballpark of what the Guidelines recommend" and our "distaste for sentencing that reflects different standards of justice being applied to white and blue collar criminals." *Id.* (internal quotations omitted). Although we agreed with the district court that there were "sound

---

(last visited Sept. 7, 2022) ("Sexual violence is sexual activity when consent is not obtained or freely given."); *Definitions*, Sexual Violence Rsch. Initiative, https://www.svri.org/research-methods/definitions (last visited Sept. 7, 2022) (defining "gender-based violence" to include "acts that inflict physical, mental or sexual harm or suffering, threats of such acts, coercion and other deprivations of liberty"); *Sexual Violence Definitions*, Mich. State Univ. Ctr. for Survivors, https://centerforsurvivors.msu.edu/education-resources/sexual-violence-educational-information/sexual-violence-definitions.html (last visited Sept. 7, 2022) (including stalking, sexual coercion, and sexual harassment as forms of sexual violence).

reasons" for a downward variance, we could not justify affirming the degree to which both the quantitative—"from roughly 15 years in prison to zero"—and qualitative—custodial to probationary—nature of the sentence differed from the norm. *Id.*

Gomez argues that in *Hoffman* we vacated the district court's sentence because it placed an undue emphasis on the actual loss that the victim, the State of Louisiana, suffered, which was small in comparison to what Hoffman had intended. *Id.* at 558. But our reasoning in *Hoffman* belies Gomez's reading. Indeed, in *Hoffman*, we recognized that "the uncertainty about whether Louisiana ultimately suffered any loss" could serve as a valid justification for a "substantial" downward variance, but that the district court's variance went too far. *Id.* at 557. There, the district court did not err in its emphasis, but how it accounted for that emphasis. Here, the disparity between Gomez's sentence and the range that the Guidelines recommends is not as great as the disparity in *Hoffman*. And, in this case, the concerns regarding deterrence are reversed. Whereas in *Hoffman* we ruled that the district court improperly discounted the deterrent effect of a tougher sentence, the district court here expressly stressed the importance of deterrence as part of its analysis.

Despite the blunders in terminology, the record is clear that the district court was guided by the facts underlying Gomez's 2012 Convictions rather than formal statutory definitions. Therefore, the court did not misinterpret the nature of Gomez's 2012 Convictions and applied a reasonably appropriate weight to his prior transgressions during sentencing.

**B.**

Section 3553(a)'s sentencing factors also include "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant," i.e.,

deterrence and incapacitation. 18 U.S.C. §§ 3553(a)(2)(B), (C). Gomez argues that the district court placed too much weight on these factors as well.

Specifically, Gomez argues that the nature of his current offense of illegal reentry differs dramatically from his prior offenses, and that the district court failed to account for this distinction. That is, Gomez contends that he could have received more than thirty years of imprisonment in the aggregate for his 2012 Convictions compared to the maximum of twenty years to which he could be sentenced for illegal reentry. He also notes that, unlike his prior offenses, his current offense has "no identifiable victim." Gomez further points to the absence of any convictions following his 2015 illegal reentry. According to Gomez, the district court incorrectly characterized him as a recidivist and "threat to all American citizens, and those who are not citizens, in this country" at sentencing, citing the district court's unfortunate statements that Gomez "is not a man who's running back over the border to roof our house" and "is not a man who is running back over the border to do lawn work."

Gomez argues that the district court's ill-suited words during the Sentencing Hearing show that it improperly weighed section 3553(a)'s sentencing factors. While we agree that this problematic language lends credence to Gomez's argument, the district court's reasoning, in toto, does not rise to an abuse of discretion.

In weighing the need for deterrence and incapacitation, the district court accounted for multiple facets of Gomez's criminal history and its relation to his life today. Gomez had reentered the country less than a year after being deported and completing the sentence for his 2012 Convictions. The court also found the facts underlying the 2012 Convictions to be "horrifying." Consequently, the court determined that Gomez's criminal history demonstrated a "lack of respect for the American legal system." The

court also considered that Gomez was likely to make another attempt at illegal reentry due to his wife and four children being located in the United States.

Gomez cites no authority for the proposition that there is a per se ceiling on the length of his current sentence because he is eligible to receive less prison time for his illegal reentry offense than for his 2012 Convictions. Nor is the lack of an identifiable victim for his most recent offense or the dearth of any interim convictions dispositive. At the Sentencing Hearing, the court was able to consider additional factors that did not exist when he was sentenced in 2012: (1) there was further evidence of Gomez's disrespect for the law, and (2) Gomez's family's presence in the United States would likely incentivize another illegal reentry attempt absent additional deterrence. Therefore, the court's reasons were sufficient to support the Variance and it did not commit an abuse of discretion.

Gomez's remaining argument is unavailing. He contends that the district court "privileged massive gaps in the record over the Guidelines." Specifically, at the Sentencing Hearing, Gomez asserted that he had been having a consensual affair with the victim in his 2012 Convictions and her call to the police was the product of a misunderstanding. Gomez made these arguments for the first time at the Sentencing Hearing and presented no corroborating evidence. The court, skeptical of Gomez's story, stated that his account was "hard to believe." Gomez does not argue that the court's factual findings here constituted clear error. *See Cisneros-Gutierrez*, 517 F.3d at 764. Instead, he asserts that they somehow show that the court used his prior four-year prison term as a "baseline" or "floor" during sentencing. In further support of this argument, Gomez points to the court's statement that a ten-year sentence might serve as a more effective deterrent than his prior four-year sentence. It was well within the court's discretion to consider

whether Gomez's previous sentence had been an effective deterrent, and, having concluded that it had not, ruled accordingly.

## III.

The Variance imposed by the district court is undoubtedly substantial. Indeed, some may reasonably disagree as to the necessity of imposing such a long sentence. Although we recognize the imperfect nature of the Sentencing Hearing, those imperfections do not rise to an abuse of discretion. Therefore, "due deference" must be given to the district court's balancing of the sentencing factors in section 3553(a). *Gall*, 552 U.S. at 51. Thus, for the foregoing reasons, the district court's judgment is AFFIRMED.