NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0033n.06
Filed: January 10, 2006

No. 05-5819

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| RICHARD JOHNSON | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: NORRIS and BATCHELDER, Circuit Judges; COHN, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.** Defendant Richard Johnson appeals his jury convictions and sentence in connection with his intentional destruction of trees belonging to the United States. On appeal, he argues that the district court erred in 1) punishing him under both 18 U.S.C. § 1361 and 18 U.S.C. § 1853 in violation of the Double Jeopardy Clause; 2) determining the amount of loss; 3) finding that he was a leader in the offenses; and 4) denying his motion for judgment of acquittal.

## I.

The United States Army Corps of Engineers (the "Corps") owns five thousand acres of land located along the Cumberland River in Tennessee. This land, the Cheatham Lake Wildlife

---

[*]The Honorable Avern Cohn, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

Management Area (the "CWMA"), is managed by the Tennessee Wildlife Resources Agency (the "TWRA") for public uses that include hiking, bird watching, hunting, fishing, skiing, and various water sports. There are 38 "duck blind sites" in this area, which are annually distributed by lottery to duck hunters. In 1997, Ducks Unlimited, a non-profit conservation group, embarked upon a project to augment and improve the duck hunting sites in the area. Defendant was a regular participant in the duck blind lottery and in the projects of Ducks Unlimited. He was an advocate of improvement of the duck blind sites, distributing fliers among duck hunters and addressing his concerns to the TWRA. Defendant favored clearing some sites in the area of trees to improve duck hunting.

On June 18, 1998, defendant and Jerry Robnett, who responded to one of defendant's fliers, attended a Ducks Unlimited meeting. At the meeting, the two proposed to TWRA wildlife manager Randy Cromer that the vicinity of duck blind 36 be cleared of trees so it could be farmed to produce crops that ducks could eat. Cromer and a biologist from the Corps told defendant that the wildlife agency would never let them clear the trees. Robnett remarked to Cromer that trees had a way of dying and that he had a pill to make them die. After consulting with the Corps, Cromer emailed defendant to let him know that the Corps had denied permission to mechanically clear that vicinity. The same email stated that the Corps had given permission to hand clear a few sites and that defendant could volunteer to do so.

On July 16, 1998, TWRA technicians discovered cartridges containing a herbicide inserted into trees between blinds 16 and 17. Subsequently, they discovered that trees around blinds 37 and 38 had been injected as well, for a total of 198 trees. Cromer recalled the remark that Robnett had

- 2 -

made at the Ducks Unlimited meeting. On July 25, wildlife officer Darrin Rider hid in blind 37 when he knew Robnett would be there and observed defendant, Robnett, and Kevin Bennett walk up to a tree and kneel down to look at the injected area. Officer Rider later went to the residences of Bennett and of Robnett, and each of them admitted that they and defendant had injected the trees. Robnett showed Officer Rider the device that they had used to inject the trees. When Robnett told defendant about Rider's visit, defendant told him that he should not have admitted their conduct. Bennett received the same response from defendant. Eventually, Robnett and Bennett testified against defendant. Defendant testified at trial as well.

The jury convicted defendant under two statutes related to the intentional destruction of government property: 18 U.S.C. § 1361 (destruction of government property) and 18 U.S.C. § 1853 (destruction of trees on public property). Specifically, it found that defendant had destroyed government property valued at over one thousand dollars. Defendant was sentenced to two years' probation for each of the two offenses, running concurrently, six months' home detention and restitution in the amount of $6,826. The amount of loss, $6,826, was determined by applying the "trunk formula method" proposed by the government to the number of trees that had died. The formula calculated the value of all the trees, even those that could not be used for timber, and took into account the ecological, aesthetic, and public use value of the trees. Defendant's sentence also reflected a two-level upward adjustment based upon a finding that he played a leadership role in the offenses.

**II.**

*1. Double Jeopardy*

A claim of double jeopardy is reviewed *de novo*. *United States v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999) (citing *United States v. Neal*, 93 F.3d 219, 220 (6th Cir. 1996)).

The district court rejected defendant's argument that the legislative history of sections 1361 and 1853 demonstrates that section 1853 is a lesser included offense, and that the conviction under the more general statute should be vacated. *See Simpson v. United States*, 435 U.S. 6, 13-15 (1978) (given that legislative intent behind two statutes relating to the use of a firearm was ambiguous as to cumulative punishment, the rule of lenity applied and only the more specific statute controlled); *see also Busic v. United States*, 446 U.S. 398, 406-07 (1980). Pointing out that the *Simpson* analysis had been altered by *Albernaz v. United States*, 450 U.S. 333, 340 (1981), the district court concluded that Congressional intent was not to be determined separately from the rule of statutory construction established in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). According to the *Blockburger* test, punishment under both of two statutes is proper when "each provision requires proof of an additional fact which the other does not." *Id.* (citing *Gavieres v. United States*, 220 U.S. 338, 342 (1911)). Although the Supreme Court acknowledged in *Albernaz* that the *Blockburger* test would not be controlling where there is a "clear indication of contrary legislative intent," 450 U.S. at 340, it modified its approach to cases in which the legislative history is silent as to whether cumulative punishment was intended. *Id.* at 340-42. When Congress is silent on the issue of cumulative punishment, its intent is determined by the *Blockburger* test. Since the district court did not find a "clear indication of contrary legislative intent," it applied the *Blockburger* test and concluded that each statute contained an element not found in the other:

Applying the *Blockburger* test here indicates that Congress intended separate punishment for conduct that violates both Sections 1361 and 1853. As the Court charged the jury in this case, to prove a violation of Section 1361, the Government must show that: (1) the defendant willfully injured, or attempted to injure; (2) property of an agency or department of the United States; and (3) the damage to that property exceed $1,000. To prove a violation of Section 1853, the Government must show that: (1) the defendant wantonly injured or destroyed trees; and (2) that injury or destruction occurred on any land of the United States which has been reserved for any public use.

Assuming that the mens rea elements of these crimes are the same (an issue disputed by the parties), each of these offenses requires proof of a fact that the other does not. To establish a violation of Section 1853 (but not Section 1361), the Government must prove that the affected trees were on government land reserved for public use. On the other hand, to prove a violation of Section 1361 (but not Section 1853), the Government must prove that the damage to the affected trees exceeded $1,000. Thus, the *Blockburger* test is satisfied for these two convictions.

The district court was correct in discerning that the legislative history of sections 1361 and 1853 is silent as to whether defendants should be punished cumulatively under both statutes, and thus that the *Blockburger* test controls. As the district court observed, sections 1853 and 1361 each contain an element that is not required by the other statute. Section 1853 requires that the destruction of trees have occurred on land of the United States that has been reserved for public use; that requirement does not appear in section 1361. As for section 1361, defendant was indicted for, and convicted of, damage to government property exceeding one thousand dollars in value. According to section 1361, if the value of damage does not exceed one thousand dollars, the statutory maximum specified by the legislature is a sentence of one year. Thus, if damage exceeding one thousand dollars is not alleged in the indictment and explicitly found by the jury beyond a reasonable doubt, the court may not sentence defendant as a felon. This element of the offense under section 1361 — that the value of damage to property must exceed one thousand dollars — is

not required to be proved by section 1853. Because each statute of conviction requires proof of a fact that the other does not, defendant has not been punished in violation of the Double Jeopardy Clause. *2. Amount of Loss*

Defendant contends that the district court should have calculated the amount of damage to the trees according to their timber value instead of the "trunk formula method," which takes into account the environmental and aesthetic value of the trees. Sentencing occurred several months after the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), which directs the district court to "consider" the Guidelines. This court continues to apply the standards of review we applied prior to *Booker. United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005) (citing *United States v. Chriswell*, 401 F.3d 459, 463 (6th Cir. 2005)).

We recently reiterated the two-step process that a district court should employ to determine the amount of loss for Guidelines purposes:

> The initial determination is whether a market value for the . . . property is readily ascertainable. Second, if such a market value is ascertainable, we must determine whether that figure adequately measures either the harm suffered by the victim or the gain to the perpetrator, whichever is greater.

*United States v. Sosebee*, 419 F.3d 451, 456 (6th Cir.), *cert. denied*, 2005 WL 3090722 (U.S. Dec. 12, 2005). We went on to note that "the market value rule should be bypassed only if the market value . . . inadequately measures the harm or gain." *Id.* (citing *United States v. Warshawsky*, 20 F.3d 204, 212-14 (6th Cir. 1994)).

In setting the loss at $6,826 the district court determined that the "market value" methodology urged by defendant failed to reflect the actual value of the trees at issue because it did

not consider fully the ecological and aesthetic value of public trees on public land to the public, and the many years it takes to grow such trees, all of which have pecuniary value to the public. The government proposed, and the district court adopted, the "trunk formula" approach to valuation, which takes into consideration those factors, such as value in terms of public use, that the court found wanting in a market-based approach. Rather than accept the $45,448 figure proposed by the government, however, the district court settled on the $6,826 figure calculated by defendant's own expert when asked to apply the trunk formula method. While still more than the $3,230 figure proposed by defendant, it is significantly less than the amount sought by the government.

We detect no error in the decision of the district court to select the "trunk formula" given the established "public use" of the lands at issue. Furthermore, the commentary to the Guidelines notes that "[t]he court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2B1.1, comment. (n.3) (Nov. 1998).[1] The amount of loss determined by the district court fulfills this requirement. For the reasons that we affirm the district court's calculation of the amount of loss, we also hold that its order of restitution in the same amount does not represent an abuse of its discretion. *Sosebee*, 419 F.3d at 455 (restitution orders reviewed for abuse of discretion).

*3. Leadership Role*

Defendant challenges the two-level upward adjustment of his offense level based on his leadership role. We review the district court's determination of defendant's role in the offense for clear error. *United States v. Williams*, 940 F.2d 176, 180 (6th Cir. 1991) (citing *United States v. Silverman*, 889 F.2d 1531, 1540 (6th Cir. 1989)). Section 3B1.1(c) of the 1998 Guidelines provides

---

[1] The 1998 version of the Guidelines were applied in this case.

that the offense level should be increased by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b) [involving five or more participants]." U.S.S.G. § 3B1.1. Application Note 2 states in part: "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. . . ." U.S.S.G. § 3B1.1, comment (n. 2). In order to warrant the leadership adjustment, the defendant must have had some degree of "control" over another participant. *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004) (quoting *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997)).

Although there is very little evidence that defendant actively managed or supervised Bennett and Robnett during the actual injections, the district court did not clearly err in light of the evidence of defendant's role in the offenses. Defendant was an organizer of volunteers for tree-clearing activities during the period when the damage to the trees occurred. Our review of the trial testimony — particularly that of Robnett and Bennett — supports the conclusion of the district court that defendant assumed a leadership role sufficient to justify the two-level enhancement.

*4. Motion for Judgment of Acquittal*

Defendant also appeals the district court's denial of his motion for judgment of acquittal. In reviewing such a motion, we examine *de novo* "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hines*, 398 F.3d 713, 719 (6th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see also United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996). The district court decided that there was sufficient

evidence for the jury to convict defendant on both counts, either as a principal or as an aider and abettor. Defendant contends that the jury found him guilty as an aider and abettor, and that the evidence was insufficient to sustain his conviction on that ground.

During its deliberations, the jury sent out a note inquiring, "Is aiding and abetting considered the same as a guilty or not guilty verdict? Why isn't it on the verdict form?" Because this note cannot tell us whether the jury found defendant guilty as a principal or as an aider and abettor, we consider the sufficiency of the evidence on either theory. The factual issues at trial came down to a contest of credibility between defendant, on the one hand, and Robnett and Bennett, on the other. Robnett and Bennett testified that the three men had intentionally injected the trees in the CWMA, while defendant testified that he had recruited volunteers to hand clear trees but had not cleared any trees without authorization from the Corps. A rational juror could resolve this contest in favor of Robnett and Bennett, particularly in view of the consistency of their accounts. Defendant admitted that he had proposed to TWRA officials the removal of trees in the subsequently injected areas, provided Robnett with the catalogue for the injection device, received the email from Cromer, organized volunteers to hand clear trees in response to Cromer's email, and knew that Robnett and Bennett were injecting trees. Defendant also admitted that he knew that he did not have permission from officials to clear any of the trees that were subsequently injected.

In addition, the jury heard testimony from a TWRA official and a Corps engineer on the issue of the value of damaged trees. The TWRA official estimated the timber value of the injected trees at $3,230.70 while the Corps engineer applied the "trunk formula method" to reach an estimate of

$45,448.  Thus, the evidence was also sufficient for the jury to find that the damage exceeded one thousand dollars.

In short, the evidence was sufficient for a rational juror to find defendant guilty on both counts.

**III.**

The judgment of the district court is **affirmed**.