# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 9, 2011

No. 10-20029

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GREGORY LIGE, also known as Gregory Blige,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas, Houston Division

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Gregory Lige appeals his judgment of conviction and sentence for illegal possession of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3), which he used to fraudulently obtain cellular phones from Sprint and Nextel. He argues that the district court should have computed the "intended loss" resulting from his scheme using the wholesale price of the phones—that is, Sprint and Nextel's replacement cost—rather than the full retail price of the phones. Because Sprint and Nextel offered these phones for sale in the retail market, we conclude that the retail price of the phones was the appropriate measure of the intended loss. Accordingly, we AFFIRM.

No. 10-20029

I.

Gregory Lige pleaded guilty without a plea agreement to illegal possession of unauthorized access devices. During the course of Lige's scheme, he made numerous telephone calls to Sprint and Nextel to obtain information pertaining to legitimate Sprint and Nextel personal and business accounts. After obtaining this information, Lige would impersonate the legitimate account holder and would order cell phones from Sprint and Nextel. These fraudulent orders would be billed to the legitimate account holders, but shipped to him. Lige would then resell the cell phones to other individuals.

In preparation for Lige's sentencing, the probation officer prepared a Presentence Investigation Report. The report noted that of the 197 fraudulent orders that Lige placed, 85 orders were actually delivered, while "[t]he remaining 112 fraudulent orders were canceled by Sprint/Nextel in advance of shipping due to suspected fraud." The report determined that these orders "resulted in actual loss of $112,655 to Sprint/Nextel," and an "intended loss of $245,881." Thus, the probation officer recommended a 12-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(G), because Lige was responsible for an intended loss of more than $200,000, but less than $400,000.

Lige objected to the report, in pertinent part, on the grounds that the 12-level enhancement was unwarranted because the report did not specify whether the loss amount reflected the retail price or the replacement cost to Sprint/Nextel, and that there was no information to support the loss amount. He contended that "any intended loss calculation should be based upon the price to Sprint/Nextel," and thus, the wholesale market was "the relevant market for determining the 'fair market value' of the loss." In response, the probation officer prepared an addendum to the PSR, clarifying that "the intended loss amount of $245,881 represents the full retail price of [the] cell

No. 10-20029

phone equipment at the time of loss according to Cort McGough, Corporate Security Manager at Sprint/Nextel."[1]

At sentencing, the district court determined that the retail value should be used to calculate the loss, and not the wholesale price, as Lige argued. The district court calculated Lige's offense level and determined that his advisory sentencing range was 46 to 57 months. After concluding that a downward departure was not warranted, the district court sentenced Lige to 46 months of imprisonment and a three-year term of supervised release. This timely appeal followed.

## II.

In reviewing the reasonableness of a defendant's sentence, we "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). The district court's "interpretation or application of the Sentencing Guidelines" is reviewed *de novo*, while its factual findings are reviewed for clear error. *Id.* In this case, the government urges us to defer to the district court's determination as to the amount of loss because it is "plausible in light of the record read as [a] whole." Yet, any argument that the district court's methodology in computing the loss is reviewed only for clear error is foreclosed by our decision in *United States v. Harris*, 597 F.3d 242, 250-51 (5th Cir. 2010). As *Harris* recognized, we must defer to a factual finding as to the amount of loss, but must consider "*de novo* how the court calculated the loss, because that is an application of the guidelines, which is a question of law. In fact, before assessing the court's loss estimate, we first determine[] whether the trial court's method of calculating the amount of loss was legally acceptable." *Id.*

---

[1] Lige does not dispute that $245,881 represents the retail price of the phones.

(internal quotation marks and citations omitted). Thus, although the government is correct that the district court's estimate of the "intended loss" is a factual finding entitled to deference, the district court's method of estimating the loss—in this case, looking to the retail prices, rather than the wholesale prices, of the stolen merchandise—is subject to *de novo* review.

The Guidelines provide for a sentencing enhancement based on the amount of loss caused by the defendant's conduct. U.S.S.G. § 2B1.1(b)(1). The application note clarifies that "loss is the greater of actual loss or intended loss." *Id.* § 2B1.1 cmt. n.3(A). Actual loss means "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1 cmt. n.3(A)(i). Intended loss means "the pecuniary harm that was intended to result from the offense." *Id.* § 2B1.1 cmt. n.3(A)(ii). Pecuniary harm is also defined: "harm that is monetary or that otherwise is readily measurable in money." *Id.* § 2B1.1 cmt. n.3(A)(iii).

The court "need only make a reasonable estimate of the loss," which "shall be based on available information, taking into account, as appropriate and practicable under the circumstances," a number of inclusive, enumerated factors. *Id.* § 2B1.1 cmt. n.3(C). One such factor is "[t]he fair market value of the property unlawfully taken, copied, or destroyed; or, if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property." *Id.* § 2B1.1 cmt. n.3(C)(i).

Our precedents require that the loss inquiry focus on the "pecuniary impact on [the] victims" and utilize a "realistic, economic approach." *United States v. Olis*, 429 F.3d 540, 545-46 (5th Cir. 2005) (internal quotation marks omitted). Based on this principle, Lige contends that the economically realistic pecuniary impact on Sprint and Nextel is merely the wholesale value of the phones—the price at which Sprint and Nextel can purchase the phones. Using

No. 10-20029

the retail value of the phones, he contends, would essentially include lost profits. However, Lige's argument ignores the fact that Sprint and Nextel are not in the business of selling phones at cost. They incur overhead costs and operating expenses beyond the wholesale cost of their merchandise, and are in business to make profits—profits that they did not receive on Lige's fraudulent orders.

Moreover, a commonsense analysis confirms that the retail price is the appropriate measure of the economically realistic pecuniary impact on the victim. In this case, the harm suffered by Sprint and Nextel is the loss of the fraudulently ordered phones. The monetary value of that harm depends on what the phones were worth to the victim. Sprint and Nextel are sellers in the retail phone market. Consequently, taking a realistic, economic approach, they would value these assets based on the price at which they could sell them, not the price at which they obtained them. Thus, the fair market value is the retail price, which is a good measure of the harm inflicted on Sprint and Nextel by the loss of the merchandise. By contrast, if Sprint and Nextel were in the business of selling wholesale lots of phones in the wholesale market, they would value the phones at the wholesale price, which would then be the fair market value. The difference results from the fact that the fair market value depends on the market at issue.

Therefore, we hold that the fair market value of stolen goods should reflect the market in which the victim merchant would have sold them—an approach to valuation this court has used before, albeit not under the Guidelines.[2] *See United States v. Perry*, 638 F.2d 862, 867-68 (5th Cir. Unit A

---

[2] Although a subsequent decision under a previous version of the Guidelines did not follow *Perry*'s approach, that defendant's offense of conviction provided a different statutory definition of value, and the court distinguished *Perry* on that basis. *See United States v. Watson*, 966 F.2d 161, 162-63 (5th Cir. 1992) (rejecting wholesale price as measure of value for goods stolen from wholesaler based on statute defining value as "cost price, either wholesale or retail, whichever is greater"). No such statutory definition is present in this case.

Mar. 1981) ("[T]he market value of goods stolen in wholesale lots from a wholesaler should be valued at the actual market value (i.e., the wholesale price) at which that victim offered the goods for sale rather than a fictitious retail price that might have been fixed by a retailer who had purchased the goods (at the wholesale price) for resale to an ultimate consumer at sufficient profit as suited the hypothetical retailer's purposes."). Indeed, *Perry*'s approach has been adopted by a number of our sister circuits in determining market value under the Guidelines. *See United States v. Stoupis*, 530 F.3d 82, 85-86 (1st Cir. 2008); *United States v. Warshawsky*, 20 F.3d 204, 213-14 (6th Cir. 1994); *United States v. Wasz*, 450 F.3d 720, 727-28 (7th Cir. 2006); *United States v. Hardy*, 289 F.3d 608, 613-14 (9th Cir. 2002); *United States v. Williams*, 50 F.3d 863, 864 (10th Cir. 1995); *United States v. Machado*, 333 F.3d 1225, 1228 (11th Cir. 2003); *but cf. United States v. Russell*, 913 F.2d 1288, 1292-93 (8th Cir. 1990) (using retail price to value goods stolen from a rural freight yard, where statute of conviction defined value as "cost price, either wholesale or retail, whichever is greater").

Lige does not dispute that the retail price represents the fair market value of the merchandise in the retail market. Rather, by urging the court to use the wholesale price, Lige is essentially asking the court to use replacement cost, rather than fair market value, to measure the loss. The application note in the Guidelines suggests that the cost of replacement should be used only when "the fair market value is impracticable to determine or inadequately measures the harm." U.S.S.G. § 2B1.1 cmt. n.3(C)(i). To say that the fair market value is inadequate to measure the harm implies that the harm suffered by the victim is greater than the fair market value of the property at issue. *See, e.g., United States v. Crandall*, 525 F.3d 907, 914-15 (9th Cir. 2008) ("Whereas an illegally converted condominium may be unmarketable and therefore have little or no

value in the market, that 'condominium' may have significant, actual economic value to the [victim] buyer, if the buyer purchased the unit for purposes of occupancy and not resale."); *United States v. Johnson*, 162 F. App'x 526, 530 (6th Cir. 2006) ("[T]he 'market value' methodology urged by defendant failed to reflect the actual value of the trees at issue because it did not consider fully the ecological and aesthetic value of public trees on public land to the [victim] public, and the many years it takes to grow such trees, all of which have pecuniary value to the public."). As discussed above, however, this is not a case where the fair market value cannot readily be determined or is not adequate to measure the harm. Rather, the pecuniary harm is the loss of the phones, whose value is determined by the price a willing buyer would pay to Sprint or Nextel. Because Sprint and Nextel offer these phones for sale in the retail market, that price is the retail price. Accordingly, the district court correctly utilized the retail price of the phones in determining the "intended loss," and did not err in imposing the 12-level sentencing enhancement on that basis.

AFFIRMED.