**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 17, 2012

No. 10-20832

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

OLIVER NKUKU,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-425-1

Before JONES, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

PER CURIAM:[*]

Oliver Nkuku was convicted by a jury for conspiracy to commit Medicare fraud and three counts of Medicare fraud. The court then sentenced Nkuku to 120 months in prison, departing upward from the guidelines. Nkuku now appeals his conviction and sentence. We AFFIRM.

**A.**

Nkuku and his wife started KO Medical Supply, Inc., in the spring of 2006

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20832

in Houston.  Nkuku's wife filed paperwork with Medicare to obtain a billing number and listed Nkuku as a delegated official of KO.[1]  The application represented that Nkuku had no adverse legal history although in fact he had spent nine months in federal prison for conspiracy to commit mail fraud in 2000. Based on this misinformation, Medicare issued KO Medical billing numbers, and KO Medical used the numbers to bill for motorized wheelchairs and scooters. These wheelchairs were allegedly being issued to Medicare beneficiaries as replacements for equipment lost in the Gulf Coast hurricanes of the last decade. While KO did in fact distribute the wheelchairs that it billed Medicare for, there was substantial concern by the government that the beneficiaries had no medical need for them.

The government investigated KO Medical and found that most of the wheelchairs were billed with a "CR Modifier," authorizing approval without the usual doctor's prescription and determination of medical necessity.  The modifier was meant as an emergency measure to facilitate replacing medically necessary equipment damaged or lost because of weather catastrophes.  Several witnesses testified they received chairs from KO Medical that they neither requested nor needed as replacements.  While in operation, KO Medical billed Medicare $1,136,493.  The government estimated that 83% of the claims submitted by KO were billed fraudulently under the CR Modifier.

The jury convicted Nkuku on all counts and the court sentenced him to 120 months in prison, three years of supervised release, and restitution in the amount of $453,112.10.

---

[1] Nkuku's wife was acquitted on all counts at trial.  Other than creating the company she did not play a role in the fraud.  She worked at Saks Fifth Avenue and was not involved in the day-to-day operations of KO Medical.

No. 10-20832

Nkuku appeals his conviction on the grounds that the district court erroneously admitted testimony regarding neoprene orthotics observed during an inspection at KO Medical, and the court erred by allowing him to be cross-examined about his assertion that he "paid his debt to society." Nkuku also challenges his sentence.

Evidentiary rulings are reviewed for an abuse of discretion where, as here, the challenging party made timely objections at trial. *United States v. Hernandez-Guevara*, 162 F.3d 863, 869 (5th Cir. 1998). Even if there was an error, this court is not required to disturb the conviction unless there is a reasonable probability that the improperly admitted evidence contributed to the conviction. *United States v. Williams*, 957 F.2d 1238, 1242 (5th Cir. 1992).

Mark Porter, an investigator with a Medicare contractor, conducted several on-site inspections of KO Medical. He testified that he found only one wheelchair in its inventory, which was odd considering the large volume of business KO conducted. Porter also observed several boxes of neoprene orthotics and stated that "Medicare stopped paying for all Neoprene orthotics in 2009 . . . because of rampant fraud and abuse." Defense counsel objected to this testimony. Overruling the objection, the court allowed Porter to give a brief explanation why the orthotics were noteworthy. Porter responded that claims involving orthotics were under review during 2009 because of fraudulent billing for medically unnecessary and unreliable services. Because of the link between orthotics and fraud, Porter made note of the inventory to pass on to the appropriate law enforcement contacts. Following Porter's testimony, the judge instructed the jury that Nkuku was only on trial for what was included in the indictment. The government made no mention of orthotics in its closing

3

No. 10-20832

arguments.

FED. R. EVID. 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove . . . character," *id.*, but the Rule does not prohibit admission of "intrinsic background information." *United States v. Miranda*, 248 F.3d 434, 440 (5th Cir. 2001). Evidence is intrinsic when the acts described and the crime charged are "inextricably intertwined," so that the testimony is "necessary to provide coherence to the government's case." *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982). "Intrinsic evidence is admissible to 'complete the story of the crime by proving the immediate context of events in time and place.'" *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quoting *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir.1996)).

The testimony about the orthotics was a significant link in explaining why KO was subjected to prepayment review by Medicare. During his investigation, Porter discovered one wheelchair in KO's inventory and no apparent repair facilities for the devices. In contrast, KO had a substantial supply of neoprene orthotics, a product that the government believed was frequently sold in Medicare fraud schemes. Porter also found in his review of patient records that most of the wheelchairs were being billed with the CR Modifier. The testimony about the orthotics was among the audit facts intrinsic to raising Porter's suspicions about KO and leading to further investigation. The court did not abuse its discretion in allowing this testimony.

Nkuku also criticizes the court's allowing the government to cross-examine Nkuku about whether he had actually "paid his debt to society." Evidence of Nkuku's prior conviction for fraud was before the jury, and on direct examination Nkuku's counsel asked him if he had paid his debt to society for his

No. 10-20832

past conviction, to which Nkuku replied that he had. On cross-examination, and over an objection, the government asked if he had paid the restitution, to which Nkuku said no. Nkuku claims that this exceeded the scope of evidence allowed to impeach his character for truthfulness under FED. R. EVID. 609(a).

Rule 609(a) allows the impeachment of the accused's character for truthfulness by the admission of a prior conviction of a crime of dishonesty. Generally, such impeachment "is limited to the number of convictions, the nature of the crimes and the dates and times of the convictions." *United States v. Gordon*, 780 F.2d 1165, 1176 (5th Cir. 1986). However, "a cross-examiner may go into anything in his cross-examination that was raised by his opponent on direct examination." *United States v. Bray*, 445 F.2d 178, 181 (5th Cir. 1971) (approving cross-examination of defendant regarding his prior criminal record). Here, Nkuku opened the door to broader questioning by asserting that he had "paid his debt to society." This choice of words, while not incorrect if "paying one's debt to society" is construed as serving one's prison sentence, was at least incomplete as he appeared to be suggesting that he takes responsibility for his mistakes. It was not an abuse of discretion for the court to allow the prosecutor to clarify that Nkuku had not paid the restitution he owed from his prior conviction.

Nkuku argues that the court erred in determining the amount of intended loss when calculating the sentence range, that the court abused its discretion by upwardly departing from the guideline, and that the court erred by not stating reasons for the sentence. The last claim was only fully briefed in Appellant's

No. 10-20832

rely brief and is waived.[2]  *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

"In reviewing the reasonableness of a defendant's sentence, we 'must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range.'" *United States v. Lige*, 635 F.3d 668, 670 (5th Cir. 2011) (quoting *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)). "The district court's 'interpretation or application of the Sentencing Guideline' is reviewed de novo, while its factual findings are reviewed for clear error." *Id.* "[W]e must defer to a factual finding as to the amount of loss, but must consider 'de novo how the court calculated the loss, because that is an application of the guidelines, which is a question of law.'" *Id.* (quoting *United States v. Harris*, 597 F.3d 242, 250-51 (5th Cir. 2010)).

The first of the remaining issues is whether the district court erred by calculating the "intended loss" for the purpose of guideline calculations. The addendum to the pre-sentence report ("PSR") found a total offense level of 30. At sentencing, the government suggested that the offense level should be raised to 32 by adding a two level enhancement for obstruction of justice, but the court declined to apply the enhancement.  The only other calculation that was in dispute at the hearing was whether intended loss should be calculated at $900,000 or $1,100,000.  If the court accepted the lower number, then the offense

---

[2] The one sentence reference without any citation to authority in the Summary of the Argument section of the opening brief is not sufficient. *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 n.5 (5th Cir. 1998) (finding that the party "waived review of these issues by not briefing them in the Argument of [the] brief").

No. 10-20832

level should be 28[3] instead of 30.

In the Statement of Reasons the court indicated that it adopted the offense level of 28. In making its sentencing pronouncement, the court said that it "considered" the loss at both levels. Ultimately, the court imposed the sentence without making clear at the hearing what intended loss value it was using to calculate the guideline range. Considering that the amount of intended loss was the only variable at issue at the sentencing hearing, it seems that the court used the lower valuation of intended loss to arrive at the offense level of 28. Because the guideline calculation was correct, even assuming the intended loss proffered by the defense, we affirm the sentence.

The second issue is whether the district erred by departing upward from the sentencing guidelines. We review upward departures from the guidelines for an abuse of discretion. *United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006). The judge gave the following reasons at sentencing: (1) Nkuku had recently finished a sentence for a prior mail fraud conviction when he committed the fraud at issue; (2) his second fraud attempt involved a higher intended loss than the first; and (3) he involved his wife in his most recent fraud. As the court noted, these factors indicated that Nkuku was "getting worse." The guidelines allow for an upward departure when the defendant's criminal history category "substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). Among the instances where the defendant's criminal history may

---

[3] The guideline range provides for a 14 level enhancement for fraud involving an intended loss of more than $400,000 but less than $1,000,000. The defense claims that intended loss should only be $567,964.95 which would still qualify for the same 14 level increase that is captured by a total offense level of 28.

No. 10-20832

be under-represented are those in which the defendant's prior conviction is similar to the current offense. *United States v. De Luna-Trujillo*, 868 F.2d 122, 124-25 (5th Cir. 1989).

Furthermore, an upward departure by a district court is not an abuse of discretion if the court's reasons for departing (1) "advance the objectives set forth in 18 U.S.C. § 3553(a)(2)" and (2) "are justified by the facts of the case." *See United States v. Saldana*, 427 F.3d 298, 310 (5th Cir. 2005). The court's remaining reasons, that he involved his wife and his crimes are escalating in severity, both fall within § 3553(a)(2). The court was legitimately concerned about the seriousness of the crime and that Nkuku was not deterred by a lighter sentence. The district court did not abuse its discretion by departing upward from the sentencing guidelines.

For these reasons, Nkuku's conviction and sentence are AFFIRMED.