# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40339

United States Court of Appeals
Fifth Circuit

**FILED**
August 12, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

DARRELL FREEZE,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:17-CR-532-1

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Freeze appeals his sentence following a guilty plea conviction for attempted enticement and coercion of a minor, in violation of 18 U.S.C. § 2422(b). Freeze was arrested following an undercover sting operation designed to catch persons attempting to sexually exploit children through Craigslist. Freeze was indicted and pleaded guilty. During the course of an unrelated child pornography investigation, the investigation's target, Randall

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40339

Bischak, accused Freeze and another man of sexually assaulting him when he was a child. In light of Bischak's allegations, the probation officer recommended a five-level enhancement for Freeze pursuant to U.S.S.G. § 4B1.5(b)(1) for engaging in a pattern of activity involving prohibited sexual conduct. The district court heard evidence at the sentencing hearing and overruled Freeze's objection to the pattern enhancement. Freeze argues on appeal that the government failed to prove by a preponderance of the evidence that he engaged in the alleged sexual encounters with Bischak. Because the district court's conclusion was plausible in light of the record as a whole, we affirm.

I.

In July 2017, the Corpus Christi Police Department and the FBI conducted an undercover investigation targeting online solicitation of minors. A Corpus Christi detective posted an advertisement on Craigslist, posing as a fictional father and seeking "fun and education" for his two fictional sons. That same day, Freeze responded to the advertisement expressing an interest in meeting the boys. Freeze exchanged several sexually explicit messages with the undercover detective and agreed to have a sexual encounter with his fictional sons, ages 11 and 14. Freeze was apprehended in Corpus Christi and law enforcement recovered condoms, lubricant, M&Ms, and the cell phone Freeze had used to communicate with the detective in his car. Freeze waived his rights and provided a statement to the officers, confirming that he communicated on Craigslist with the undercover officer and that he intended to engage in sexual conduct with minors.

Freeze was indicted on August 23, 2017 on one count of attempting to persuade or coerce a minor to engage in prohibited sexual activity—in this

2

No. 18-40339

case, sexual assault under Texas law[1]—in violation of 18 U.S.C. § 2422(b). On October 30, 2017, Freeze pleaded guilty pursuant to a written plea agreement.

During their investigation of Freeze, investigators contacted law enforcement agencies in the surrounding area to determine if Freeze had been accused of sexual contact with a minor on any other occasion. Investigators learned that a man currently residing in Arizona, Randall Bischak, had told authorities that he had two sexual encounters with Freeze when Bischak was a minor.

Bischak made the allegations during the course of law enforcement's investigation of Bischak's own involvement in the production and distribution of child pornography.[2] In March 2015, the Department of Homeland Security Investigations unit began investigating a messaging service, KIK Messenger, used to manufacture and distribute child pornography. As part of that investigation, the HSI agents in Philadelphia observed a KIK user, "PupBrass", posting sexually explicit material depicting children. After identifying PupBrass as Randall Bischak of Arizona, Philadelphia agents referred the investigation of Bischak to Josh McCready, an HSI Agent based in Arizona. During the course of McCready's investigation of Bischak, Bischak made allegations against Freeze, documented in three law enforcement reports—the government introduced those reports at Freeze's sentencing.[3]

The first report describes a polygraph examination of Bischak conducted by McCready in April 2016. During that interview, Bischak stated that he had

---

[1] Tex. Pen. Code § 22.011.

[2] On May 3, 2017, Bischak pleaded guilty to three counts of production of child pornography in the District of Arizona and was sentenced to 240 years of imprisonment. *United States v. Bischak*, No. 4:16-CR-1004 (D. Ariz.), ECF No. 50.

[3] The government attached the reports as exhibits to its response to Freeze's objections to the PSR. They also attached a short fourth report, documenting McCready's contact with local police departments to inform them of Bischak's allegations.

been molested as a child by two individuals whom he identified as Darrell Freeze, a school bus driver from Beeville, Texas and another man who was a substitute teacher from San Antonio, Texas. McCready's report contains no other details of the molestation allegations. With respect to his own crimes, Bischak stated that he had an online "alter ego" and that he had an age preference for children between eleven and fifteen years old. Bischak admitted that he had a sexual relationship with David Frodsham, who had a 16-year-old adopted son. Bischak initially claimed that, on one occasion Frodsham "enticed Bischak to Frodsham's residence for the purposes of Bischak engaging in sexual relations with [a] five or six year old child," but that Bischak's "conscience would not allow the sexual relations to take place." This turned out to be untrue. After the polygraph examination and follow-up interview, McCready left Bischak's house, viewed his phone history, and found ten child pornography videos and two still photographs, including one depicting Bischak having sexual relations with Frodsham's son. Bischak later admitted to creating the video.

The second report documents Bischak's May 2016 "free talk" session between Bischak and McCready and other law enforcement officers in the presence of an AUSA and Bischak's attorney. With respect to Freeze, "Bischak stated that he [wa]s interested in prosecuting Darrell Freeze and [the San Antonio man] who molested Bischak when he was in high school."

In February 2017, Bischak agreed to an audio-recorded interview. The recording and the transcript are not in the record. An investigator in the Wilson County Sheriff's Office, Stephen Moore, created a written report summarizing that tape.[4] According to Moore's summary, Bischak made the

---

[4] Bischak lived in Wilson County at the time of the alleged sexual encounters with Freeze.

following statements: between 2005 and 2006, Freeze and Bischak met online through the website silverdaddies.com, "a gay hook up website" and Freeze's username was "Fire Heats 2000"; Bischak and Freeze met at Bischak's house in the Wood Valley subdivision in La Vernia; the two met several times before any sexual encounter. Bischak described two sexual encounters in Bischak's house and in an empty lot nearby which involved oral and anal sex. Bischak was between 14 and 15 at the time of those encounters. Bischak described that Freeze paid Bischak's subscription fee to the website so they could continue communicating and that contact ended before high school. Bischak also stated that Freeze gave him money to purchase minutes for a TracFone and claimed there were other occasions where they had planned to meet for a sexual encounter but that meeting did not occur. Bischak described Freeze as a bald man, possibly in his mid to late 40s, who drove a white automobile; he remembered Freeze lived in Beeville and complained about the drive between Beeville to La Vernia; Bischak located Freeze on Facebook prior to Bischak's arrest and the two had a conversation on Facebook messenger consisting of "small talk."

In Freeze's PSR, the probation officer calculated a guideline range of 324–405 months.[5] The PSR included a recommendation for a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b)(1) for engaging in a pattern of activity involving prohibited sexual conduct, based on the Bischak's

---

[5] Freeze had no criminal history, establishing a criminal history category of I. The base offense level was 28. The probation officer recommended a two-level enhancement for use of a computer to entice or solicit a person to engage in prohibited sexual conduct with a minor in violation of U.S.S.G. § 2G1.3(b)(3)(B) and an eight-level enhancement because the offense involved a minor who was under the age of 12 in violation of § 2G1.3(b)(5)(B). Freeze did not object to those enhancements.

allegations. Without that enhancement, the guideline range would have been 188–235 months.[6]

The PSR outlined Bischak's allegations against Freeze. Freeze filed written objections to the PSR, objecting only to the five-level pattern enhancement under § 4B1.5(b)(1), contending that there was not sufficiently reliable evidence to support the adjustment. Following those objections, the probation officer added two addenda to the PSR describing Bischak's statements made in interviews by law enforcement and addressing the inconsistencies.[7] Freeze filed a supplemental objection, "categorically reject[ing]" the allegations and noting that defense counsel had not seen law enforcement's reports until they were submitted as government exhibits to its response to Freeze's objection. The district court held a sentencing hearing on April 10, 2018, and heard testimony from three witnesses and arguments from the parties.

McCready testified as a government witness and described his involvement in the investigation into Bischak's production of child pornography. He detailed the three interviews of Bischak and the investigative work he did to corroborate the details of the allegations.[8]

McCready testified that he had independently investigated Bischak's allegations and was able to corroborate several details including Freeze's occupation, marital status, and that he had one child. During the investigation, McCready forensically analyzed Bischak's phone and saw Facebook messages

---

[6] The difference between the high-end of the range without the enhancement and the low-end of the range with the enhancement is 89 months, or approximately 7 ½ years. The difference between the high-end of the range without the enhancement and Freeze's eventual term of imprisonment (380 months) is 145 months, or approximately 12 years.

[7] The second addendum summarized the law enforcement reports attached to the government's response as exhibits.

[8] For example, McCready was able to corroborate Freeze's occupation, marital status, that he had one child, and that Bischak and Freeze exchanged Facebook messages.

between Bischak and Freeze.[9] On cross-examination, Freeze's counsel challenged Bischak's credibility based on various statements Bischak made during the February 2017 interview—McCready acknowledged several inconsistencies and Bischak's admission that his memory was hazy. McCready also testified that Bischak had provided information about other individuals that led to subsequent arrests and convictions—he received a downward departure at his own sentencing for that assistance. The district court interjected at one point and asked McCready, "Did you believe what he said about being sexually abused by this man?" McCready replied, "Yes, Your Honor. He gave a pretty in-depth description of two specific instances [of sexual abuse]."

Defense counsel called two witnesses. The first, Lamar Saenz was an investigator, and testified that Freeze lived in a rented house in Pettus, Texas from 2003 to 2011.[10] He testified that he had met with Freeze's ex-wife—Freeze was divorced in 2006—who reported that Freeze "had a receding hairline and that he kept his hair short, but [was] not totally bald." Saenz stated that Freeze's wife told him that the couple filed for bankruptcy in 1998 and it was finalized in 2001, after which point they did not have any credit cards. Saenz was briefly recalled later in the hearing and testified that Freeze's wife had informed him that the couple had a joint bank account when married which was to her knowledge "the only account that they had."

The second witness was Briana DeLeon, an assistant paralegal for the public defender's office. She testified that through investigation, she

---

[9] Although McCready could not recall the exact content of those messages, he testified that they mainly consisted of small talk and contained nothing of a sexual nature. McCready testified that investigators pulled up Freeze's profile during an interview and Bischak positively identified Freeze.

[10] On cross-examination, Saenz testified that Pettus is approximately 18–20 miles from Beeville, Texas.

discovered Silverdaddies was free to use. She also testified that she had reviewed Freeze's bank records and could not identify any payments made for a Silverdaddies subscription or purchases of TracFone minutes.[11] On cross-examination, DeLeon confirmed that (1) if Silverdaddies had been free when Freeze used it, there would be no record in his bank account; (2) TracFone minutes could be purchased with cash at convenience stores; and (3) she did not know how many bank accounts Freeze had.

After the witness testimony, the parties gave their respective arguments. Freeze contended that Bischak's allegations were unreliable, emphasizing Bischak's "fuzzy" memory; Bischak's claim that Freeze was bald even though he had hair; Bischak's statement that Freeze lived in Beeville when he in fact lived in Pettus;[12] the lack of bank records verifying purchases for a Silverdaddies subscription or TracFone minutes;[13] and the sentencing reduction Bischak received for providing information to prosecutors. Defense counsel asserted that Freeze had met the burden of production to show that there were not sufficient indicia of reliability for these allegations and that the government had not done enough to corroborate Bischak's allegations.

The government pointed out that Bischak had identified Freeze on three separate occasions and, when investigators showed Bischak Freeze's Facebook page and photo, Bischak confirmed that Freeze was the man who had sexually abused him. The government emphasized that Bischak and Freeze had communicated on Facebook 16 months before Freeze was arrested. Finally, the

---

[11] At this point, the district court interrupted and asked how DeLeon identified which bank accounts belonged to Freeze. DeLeon stated that the information came from Freeze. When the court asked if DeLeon could swear that she accounted for every single account belonging to Freeze, DeLeon answered that she could not.

[12] The district court noted at this point that Beeville and Pettus are in the same county.

[13] At this point, the court noted that the defense investigator did not search for additional bank accounts, instead relying on the account of Freeze and his wife.

government noted that the District of Arizona judge had accepted the government's 5K motion in Bischak's case, indicating that judge found Bischak to be credible.

The district court overruled Freeze's objections and sentenced Freeze to a term of 380 months' imprisonment, followed by 25 years of supervised release.

## II.

We review the district court's interpretation or application of the Sentencing Guidelines *de novo* and its factual findings for clear error.[14] "In determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well."[15] "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole."[16]

U.S.S.G. § 4B1.5(b)(1) provides for a five-level increase to a defendant's offense level if the offense of conviction is a "covered sex crime" and the defendant "engaged in a pattern of activity involving prohibited sexual conduct."[17] Freeze concedes that his offense of conviction is a "covered sex crime" under U.S.S.G. § 4B1.5 cmt. n.2. The comments to Section 4B1.5 establish that "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor."[18] Freeze also concedes

---

[14] *United States v. Torres-Hernandez*, 843 F.3d 203, 207 (quoting *United States v. Lige*, 635 F.3d 668, 670 (5th Cir. 2011)).

[15] *United States v. Muniz*, 803 F.3d 709, 712 (5th Cir. 2015) (quoting *United States v. Ramos-Delgado*, 763 F.3d 398, 400 (5th Cir. 2014) (internal alterations and quotation marks omitted)).

[16] *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007) (quoting *United States v. Huerta,* 182 F.3d 361, 364 (5th Cir. 1999)).

[17] U.S.S.G. § 4B1.5(b)(1).

[18] § 4B1.5, cmt. n.4(B)(i); *Sealed Appellee v. Sealed Appellant*, 825 F.3d 247, 256 (5th Cir. 2016).

that, "if proven, the alleged sexual conduct [with Bischak] would qualify as the 'prohibited sexual conduct'" and as a pattern of activity. His sole contention is that the record does not plausibly support a finding that the alleged sexual encounters actually occurred.

Freeze contends that his rebuttal evidence removed the PSR as sufficiently reliable proof of the facts necessary to support the pattern enhancement. Therefore, Freeze asserts that the government was required to produce evidence sufficient to demonstrate the reliability of Bischak's claims and the record evidence here does not support a finding that he actually engaged in the prohibited sexual conduct. He challenges the specific inconsistencies in Bischak's allegations and highlights Bischak's unreliable memory and motive to fabricate the allegations. With respect to the inconsistencies, Freeze highlights Bischak's description of his age at the time of the alleged encounters, Freeze's town of residence and occupation, whether Freeze was bald, and the fact that there was no record of transactions for Silverdaddies or TracFone in the bank records Freeze's investigator surveyed. Freeze emphasizes Bischak's admission that his memory was "fuzzy" and the fact that Bischak had a motive to fabricate allegations to secure a reduction in his own sentence.

The government acknowledges that it bears the burden to establish the requisite factual predicate for the pattern enhancement, and points to corroborating details in Bischak's statements: Bischak recalled Freeze's Silverdaddies username as containing "fire" and "heat," consistent with Freeze's job as a volunteer firefighter; Bischak knew Freeze had been married with one child; Bischak recalled complaints about the drive from Beeville—where Freeze had worked and near where he lived in Pettus—to La Vernia, where Bischak lived; Bischak correctly identified Freeze's age at the time of the alleged incident; Bischak recalled Freeze as bald which was consistent with

No. 18-40339

Freeze's receding hairline and short hair; and Bischak claimed to have been in contact with Freeze via Facebook recently, which McCready confirmed was true. The government also notes that Bischak had not been indicted when he initially accused Freeze, undercutting Freeze's credibility argument.

"When making factual findings for sentencing purposes, district courts 'may consider any information which bears sufficient indicia of reliability to support its probable accuracy.'"[19] Further, "[t]he sentencing court is free to consider all relevant evidence, even inadmissible evidence, in determining whether an adjustment is warranted so long as the evidence has . . . sufficient indicia of reliability to support its probable accuracy."[20] If the factual recitation in the PSR bears sufficient indicia of reliability, the defendant bears the burden of demonstrating that the PSR is inaccurate.[21] "Rebuttal evidence must consist of more than a defendant's objection; it requires a demonstration that the information is 'materially untrue, inaccurate or unreliable.'"[22]

The sentencing record contained evidence that Bischak identified Freeze as his abuser in three separate interviews. Freeze presented rebuttal evidence

---

[19] *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)). Although the district court did not make explicit factual findings at the sentencing hearing, instead overruling the objection after the parties' argument, the government suggests that the district court made findings by adopting the PSR in its Statement of Reasons. Freeze does not challenge that the district court actually made findings. We note here that the adoption of the PSR is sufficient to constitute findings. *See e.g.*, *United States v. Walker*, 29 F.3d 908, 911 (4th Cir. 1994) ("Simply adopting the PSR's findings *in toto* is sufficient when the context of the ruling makes clear that the district court intended [by the adoption] to rule on each of the alleged factual inaccuracies. In such a context, an appellate court can discern the factual bases of the district court's sentencing rulings-namely, the facts set forth in the PSR-and therefore is able to perform meaningful appellate review." (internal citation and quotation marks omitted)).

[20] *United States v. Alaniz*, 726 F.3d 586, 627 (5th Cir. 2013) (concluding district court did not err in denying two-level minor participant reduction) (quoting *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001)).

[21] *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013).

[22] *Id.* (citing *Harris*, 702 F.3d at 230).

demonstrating specific inconsistencies in Bischak's statements and general challenges to Bischak's reliability based on his hazy memory and motive to fabricate given his own criminal situation. However, the government introduced facts that were corroborated with extrinsic evidence. For example, Bischak correctly identified Freeze's age at the time of the encounters, Bischak's memory of Freeze's Silverdaddies username corresponded to Freeze's volunteer firefighting position, and Bischak remembers Freeze's complaints about the drive between Beeville and La Vernia. Further, Bischak told investigators that he and Freeze had reconnected on Facebook messenger *before* Bischak's arrest, which investigators were able to independently confirm.[23] Freeze argues his case is distinguishable from *United States v. Chavez*, where this court upheld a sentencing enhancement based on statements in a PSR made by a co-conspirator.[24] Freeze argues that this case is different because in *Chavez*, the defendant presented no rebuttal evidence and the co-conspirators statements were consistent with other known facts. But in Freeze's case, Bischak's statement is consistent with some known extrinsic facts—for example, the exchange of Facebook messages between the men.[25]

Freeze also suggests that the government's response to some of Freeze's rebuttal evidence is unavailing and overstates Freeze's burden—for example, Freeze presented rebuttal evidence that there was no record of a Silverdaddies subscription purchase in his bank records, but the government notes Freeze

---

[23] Freeze's only response to this corroborating evidence is to suggest that the fact that the conversation was "small talk" indicates that there was not prior familiarity between the two men.

[24] 947 F.2d 742, 746–47 (5th Cir. 1991).

[25] For the same reason, Freeze's comparison to *United States v. Garcia*, 500 F. App'x 653 (9th Cir. 2012) is unavailing. He again fails to account for the corroboration present in this case. *Cf. Garcia*, 500 F. App'x at 655 ("[The victim's siblings'] hearsay statements were not corroborated by any extrinsic evidence.").

did not conclusively show that he had only one bank account. However, the district court explicitly considered the veracity of that rebuttal evidence and found it unconvincing.

We conclude that the district court's findings were "plausible in light of the record as a whole."[26] While Freeze has highlighted inconsistencies in Bischak's allegations, the government introduced evidence of corroborating details. Given that corroboration and taking the record as a whole, we cannot conclude with a "definite and firm conviction that a mistake has been committed" and the district court's finding was clearly erroneous.[27] We affirm the judgment of the district court.

---

[26] *United States v. Hagman*, 740 F.3d 1044, 1048 (5th Cir. 2014) (internal citation and quotation marks omitted); *United States v. Harris*, 434 F.3d 767, 773 (5th Cir. 2005) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently, or similarly, a factual finding is not clearly erroneous unless although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.") (internal citations and quotation marks omitted).

[27] *Hagman*, 740 F.3d at 1048 (internal citation and quotation marks omitted).